**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

C.K., an individual,         )
         )
    Plaintiff,       )
         )
v.         )
         )   Case No.
WYNDHAM HOTELS AND RESORTS,  )
INC., HILTON WORLDWIDE    )   3:19-cv-01412
HOLDINGS, INC., MARRIOTT    )
INTERNATIONAL, INC., INTER-   )
CONTINENTAL HOTELS      )
CORPORATION, and HYATT HOTELS  )
CORPORATION,       )
         )
    Defendants.     )
_____)

## INTER-CONTINENTAL HOTELS CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**WICKER SMITH**

Michael A. Holtmann
Florida Bar No. 981184
2800 Ponce de Leon Blvd Ste. 800
Coral Gables, FL 33134-6913
Telephone: (305) 461-8770
Facsimile: (305) 441-1745
mholtmann@wickersmith.com

**HOLLAND & KNIGHT LLP**

William N. Shepherd
Florida Bar No. 88668
222 Lakeview Avenue
Suite 1000
West Palm Beach, FL 33401
Telephone: (561) 883-2000
Facsimile: (561) 650-8399
William.shepherd@hklaw.com

John M. Hamrick
Georgia Bar No. 322079
(*pro hac vice* application pending)
1180 West Peachtree Street, NW
Suite 1800
Atlanta, GA 30309
Telephone: (404) 817-8500
Facsimile: (404) 881-0470
john.hamrick@hklaw.com

*Counsel for Inter-Continental Hotels Corporation*

# Table of Contents

**Page**

I.     INTRODUCTION ...................................................................................1

II.    RELEVANT FACTUAL BACKGROUND.............................................2

III.   LEGAL STANDARDS ..........................................................................3

IV.    ARGUMENT AND CITATION OF AUTHORITIES..........................4

    A.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST IHC PURSUANT TO TVPA § 1595(A) UNDER A "BENEFICIARY" THEORY ................................................4

       1.   Plaintiff Fails to Adequately Allege That IHC "Participated in a Venture"...............5

       2.   Plaintiff Has Not Pleaded Facts Sufficient to Suggest that IHC "Knowingly Benefitted Financially or By Receiving Anything of Value".....................................8

       3.   Plaintiff Fails to Adequately Allege IHC Knew or Should Have Known of An Act in Violation of the TVPRA ...............................................................10

    B.   PLAINTIFF'S ALLEGATIONS OF VICARIOUS LIABILITY AGAINST IHC ARE INSUFFICIENT AS A MATTER OF LAW ...........................................12

       1.   The Complaint Does Not Properly Allege Actual Agency, Nor Can a TVPRA Claim Be Premised On An Alleged Franchising Relationship ...................................12

       2.   The Complaint Does Not Sufficiently Allege Apparent Agency .............................15

    C.   PLAINTIFF'S COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING WHICH DOES NOT PROPERLY DISTINGUISH BETWEEN THE ALLEGED ACTS OF EACH DEFENDANT .....16

V.     CONCLUSION.....................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Acharya v. 7-Eleven, Inc.,*
    No. 1:18-cv-08010-PAC, 2019 WL 6830203 (S.D.N.Y. Dec. 13, 2019)................................15

*Andrade v. Arby's Rest. Grp., Inc.,*
    Case No. 15-cv-03175 NC, 2015 WL 6689475 (N.D. Cal. Nov. 3, 2015)............................15

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)......................................4, 10, 11, 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 195, 5167 L. Ed. 2d 929 (2007)........................................................4

*Bricker v. R&A Pizza, Inc.,*
    804 F. Supp. 2d 615 (S.D. Ohio 2011) .................................................................................15

*Byrne v. Nezhat,*
    261 F.3d 1075 (11th Cir. 2001) ..........................................................................................17

*Cain v. Shell Oil Co.,*
    994 F. Supp. 2d 1251 (N.D. Fla. 2014)...........................................................................12, 14

*Canosa v. Ziff,*
    No. 18 CIV 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ....................................6

*Cha v. Hooters of Am., LLC,*
    No. 12-CV-4523(DLI)(JMA), 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) ......................15

*Chaparro v. Carnival Corp.,*
    693 F.3d 1333 (11th Cir. 2012) ..........................................................................................4

*Geiss v. Weinstein Co. Holdings LLC,*
    383 F. Supp. 3d 156 (S.D.N.Y. 2019).......................................................................6, 8, 9, 10

*H.H. v. G6 Hospitality, LLC,*
    2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019)................................................10

*Hill v. White,*
    321 F.3d 1334 (11th Cir. 2003) (per curiam).......................................................................4

*Howell v. Chick-Fil-A, Inc.,*
    No. 92-30188-RV, 1993 WL 603296 (N.D. Fla. Nov. 1, 1993)............................................13

*Madison v. Hollywood Subs, Inc.,*
    997 So. 2d 1270 (Fla. 4th DCA 2009) .................................................................................13

*Magluta v. Samples,*
    256 F.3d 1282 (11th Cir. 2001) ...................................................................17

*Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.,*
    637 F. Supp. 2d 1029 (M.D. Fla. 2009)......................................................14

*Mobil Oil Corp. v. Bransford,*
    648 So. 2d 119 (Fla. 1995)..........................................................................15

*Muchira v. Al-Rawaf,*
    850 F.3d 605 (4th Cir. 2017) .........................................................................4

*Nahid v. Bank. of Am. Corp.,*
    Case No. 1:11-cv-04177-CAP-RGV, 2012 WL 13133644 (N.D. Ga. Apr. 23,
    2012) .............................................................................................................17

*Noble v. Weinstein,*
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)..............................................5, 6, 7, 8

*Randall v. Scott,*
    610 F.3d 701 (11th Cir. 2010) .......................................................................4

*Ratha v. Phatthana Seafood Co.,*
    No. CV 16-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) .............7, 11

*Ricchio v. McLean,*
    853 F.3d 553 (1st Cir. 2017)........................................................................10

*TRW Inc. v. Andrews,*
    534 U.S. 19, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001)..............................10

*United States v. Afyare,*
    632 F. App'x 272 (6th Cir. 2016) ...............................................................5, 6

*United States v. Longoria,*
    569 F.2d 422 (5th Cir. 1978) .........................................................................6

*Vermeulen v. Worldwide Holidays, Inc.,*
    922 So. 2d 271 (Fla. 3d DCA 2006) ...........................................................15

*Wu v. Dunkin' Donuts, Inc.,*
    105 F. Supp. 2d 83 (S.D.N.Y. 2000)...........................................................14

**Statutes**

18 U.S.C. § 1595.....................................................................................1, 4, 5, 8, 10

18 U.S.C. § 1591(e)(5).......................................................................................5

22 U.S.C. § 7102 *et seq.*...................................................................................................1

Fla. Stat. § 772.104 ........................................................................................................17

**Other Authorities**

Federal Rule of Civil Procedure 8 ...........................................................................16, 17

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1, 3, 17

Defendant Inter-Continental Hotels Corporation[1] ("Defendant" or "IHC"), a company within the InterContinental Hotels Group ("IHG") family of companies and brands, pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Motion to Dismiss Plaintiff C.K.'s ("Plaintiff") Complaint. As a preliminary matter, IHG states that it condemns human trafficking in all forms and is committed to working with hotel owners to aggressively combat human trafficking. In support of its motion, IHC states as follows:

## I.      INTRODUCTION

Plaintiff's Complaint must be dismissed for three reasons.

*First*, Plaintiff fails to allege facts sufficient to give rise to a TVPRA violation by IHC. To state a claim under the TVPRA, Plaintiff must allege facts showing that IHC "knowingly benefit[ed] . . . from participation in a venture which it knew or should have known" committed a human-trafficking crime. 18 U.S.C. § 1595. The Complaint fails to allege that IHC "participated in a sex-trafficking venture" because it contains no allegations of affirmative, overt actions by IHC that furthered the venture. Plaintiff also does not plausibly allege that IHC "knowingly benefitted" from Plaintiff's trafficking because there are no allegations of a causal relationship between affirmative conduct by IHC and receipt of any benefit by IHC. Moreover, while Plaintiff repeats the legal conclusion that IHC "knew or should have known" about Plaintiff's trafficking throughout her Complaint, she does not provide any supporting facts demonstrating how IHC—which is not the franchisor, franchisee, the hotel owner, or the hotel operator and has no privity or relationship with the hotel in question—knew or should have known about Plaintiff's trafficking.

---

[1] Inter-Continental Hotels Corporation is incorrectly named in this case. The Complaint identifies IHC as the franchisor of the former Crowne Plaza® Jacksonville Riverfront at 1201 River Place Boulevard. But the franchisor of what was the Crowne Plaza® hotel identified in the Complaint is Holiday Hospitality Franchising, LLC.  The hotel is no longer a Crowne Plaza® branded hotel.

*Second*, Plaintiff's allegations of actual and apparent agency fail as a matter of law. The Complaint contains no credible claims of franchisor liability or of an actual agency relationship between IHC and the franchised hotel owner: it merely alleges IHC retained the right to enforce certain brand standards, or simply makes conclusory allegations attempting to show joint employer status. In addition, Plaintiff's conclusory allegation that an "apparent agency also exists" because IHC "held out Crowne Plaza® hotels to the public as possessing authority to act on its behalf" is nothing more than a legal conclusion couched as a factual allegation.

*Third*, the Complaint must be dismissed because it is a "shotgun" pleading. The Complaint is based on improper group allegations that "Defendants" engaged in various conduct even though IHC and its four co-defendants are alleged to be legally unrelated entities. Such group pleading makes it impossible for IHC or the Court to determine which allegations Plaintiff purportedly attributes to IHC, and which allegations she asserts against the other defendants.

## II.   RELEVANT FACTUAL BACKGROUND

Plaintiff seeks to hold IHC, the purported franchisor,[2] liable for Plaintiff's alleged trafficking that occurred at the independently owned and operated Crowne Plaza® Jacksonville Riverfront, located at 1201 River Place Boulevard in Jacksonville, Florida (the "Hotel"). (Doc. No. 1, ¶ 13). Plaintiff alleges IHC is a "hotel brand," which lends its "name and likeness to third party owners." (*Id.*, at ¶ 48). Plaintiff further alleges that IHC as the "parent brand" "gives the

---

[2] In various instances throughout the Complaint, Plaintiff makes contradictory assertions as to the legal relationship between IHC and the hotel at issue. *Compare* (Doc. No. 1, ¶ 13) (alleging IHC is the "hotel operator"), *with* (*id.*, ¶¶ 48) (alleging IHC is the franchisor), (*id.*, ¶¶ 51) (alleging IHC is the "parent hotel brand"), *and* (*id.*, ¶ 60) (alleging IHC "owned, supervised, and/or operated" the subject hotel). Plaintiff makes the same contradictory assertions as to all five named defendants. To the extent Plaintiff actually intends to allege IHC is anything other than the franchisor in her Complaint, Plaintiff fails to provide sufficient facts to support those legal conclusions. This motion to dismiss should be granted regardless of whichever label Plaintiff chooses to allege.

franchisee property its identity," thus allowing, for example, the hotel owner/franchisee to use the brands' "signage on and in front of the building" and to use its branding on items such as "pens" and "staff uniforms." (*Id.*, ¶ 49). Under this model, Plaintiff alleges the Hotel's "building and operations are run by the franchisee or a third party management company . . . ." (*Id.*, ¶ 48). Plaintiff alleges the actual franchisor/franchisee relationship is governed by contract. (*Id.*, ¶ 51).

The specific factual allegations against IHC are quite sparse. Plaintiff alleges that "Crowne Plaza® brand hotels are IHG[3] hotels." (*Id.*, ¶ 13). In conclusory fashion, Plaintiff then alleges: "[T]hrough its relationship with the [unidentified] staff at the Crowne Plaza®. . . Defendant IHG knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking." (*Id.*). Without alleging specific facts, Plaintiff simply states that "[d]espite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant IHG has repeatedly failed to stop these actions." (*Id.*, ¶ 60).

Plaintiff's Complaint mostly contains general allegations regarding human trafficking and the hospitality industry generally. Plaintiff alleges that, between 2008 and 2012, Plaintiff would go to the Hotel with "no luggage or I.D." and that unidentified Hotel staff "was or should have been aware" of various indicia of trafficking. (*Id.*, ¶¶ 77, 78, 84, 86). While the Complaint contains disturbing allegations of abuse by Plaintiff's trafficker, there are no concrete allegations that IHC participated in the sex trafficking venture at issue, was aware of Plaintiff's trafficking, or profited because of Plaintiff's trafficking

### III.   LEGAL STANDARDS

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of

---

[3] Plaintiff refers to IHC as "IHG" in her Complaint. IHG is a trade name by which companies within the InterContinental Hotels Group of companies are publicly known.

Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 195, 5167 L. Ed. 2d 929 (2007)). In reviewing the motion, the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). However, courts are not required to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papsan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 293, 292 L. Ed. 2d 209 (1986)). "A complaint that provides 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is not adequate to survive a 12(b)(6) motion to dismiss." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 677. The court "should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

## IV.   ARGUMENT AND CITATION OF AUTHORITIES

### A.   Plaintiff Fails to State a Claim Against IHC Pursuant to TVPA § 1595(a) Under a "Beneficiary" Theory

While "[t]he TVPA is primarily a criminal statute," *Muchira v. Al-Rawaf*, 850 F.3d 605, 608 (4th Cir. 2017), a plaintiff may bring a private civil action pursuant to 18 U.S.C. § 1595. Under that section:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover

damages and reasonable attorney's fees.

18 U.S.C. § 1595(a). The requirements to hold an alleged "beneficiary" civilly liable under Section 1595(a) are: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

1.   Plaintiff Fails to Adequately Allege That IHC "Participated in a Venture"

The Complaint does not allege overt actions by IHC that demonstrate active participation in a sex trafficking venture and an alleged failure to act cannot serve as the basis for liability under the TVPRA. *See* 18 U.S.C. § 1595(a). Instead, the Complaint alleges that IHC should have done more to prevent the occurrence of sex trafficking generally, which is insufficient.

Under the TVPRA, "venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(5). Congress defined "participation in a venture" as "knowingly assisting, supporting, or facilitating [sex trafficking]." *Id.* § 1591(e)(4). Under these definitions, "liability, cannot be established by association alone, [and] Plaintiff must allege specific conduct that furthered the sex trafficking venture." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). In other words, "some participation <u>in the sex trafficking act itself</u> must be shown." *Id.* (emphasis added) (citing *United States v. Afyare*, 632 F. App'x 272, 283 (6th Cir. 2016) (stating in a Section 1591 criminal matter[4] that the "defendant's mere membership in the venture is insufficient if he is ignorant of the venture's sex trafficking activities (and the means and methods thereof).")); *Geiss v. Weinstein Co. Holdings LLC*, 383 F.

---

[4] Although *Afyare* was brought under the criminal penalty section of the TVPA, the language "participation in a venture" appears in both the civil and criminal sections of the statute, and therefore should be interpreted in the same manner. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (stating "identical words used in different parts of the same statute are generally presumed to have the same meaning.").

Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation in a sex-trafficking venture, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture.") (emphasis in original)). Congress's definition of "venture" in the TVPRA tracks the common law understanding of a joint venture, which is "[a] business undertaking by two or more persons engaged in a single defined project." Black's Law Dictionary (11th ed. 2019).

In line with these definitions, "participation in a venture" under the TVPRA requires more than "mere negative acquiescence" in or a failure to stop the specific alleged misconduct: participation implies that a party takes affirmative acts. *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) ("To prove participation, there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that the defendant committed an overt act designed to aid in the success of the venture. Proof of mere negative acquiescence will not suffice.") (emphasis added); *Afyare*, 632 F. App'x at 286 (noting the district court's comment on a Section 1591 claim that the statute did not criminalize a defendant's "mere negative acquiescence," and to do so would create "a vehicle to ensnare conduct that the statute never contemplated."). For these reasons, Plaintiff's laundry list of items IHC purportedly *did not do* to prevent sex trafficking generally are legally insufficient to allege participation in a sex trafficking venture. *See, e.g.*, (Doc. No. 1, ¶ 60) (listing seven bullet points of IHC's alleged inactions relating to human trafficking).

To survive a motion to dismiss, Plaintiff must allege that IHC "actually participated in a sex-trafficking venture" by "commit[ting] some 'overt act' that furthers the sex trafficking aspect of the venture." *Afyare*, 632 F. App'x at 286; *see also Geiss*, 383 F. Supp. 3d at 169; *Canosa v. Ziff*, No. 18 CIV 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019); *Noble*, 335 F.

Supp. 3d at 524; *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (same). But the Complaint does not contain a single allegation of an overt act by IHC. Instead, Plaintiff merely repeats general conclusory allegations that IHC "facilitated" or was otherwise "involved" in Plaintiff's trafficking. *See* (Doc. No. 1, ¶ 60) (Plaintiff's claim of "apathy to the real risk of sex trafficking and pervasive willful blindness to the role Crowne Plaza® hotels play in sex trafficking [which] facilitated the sex trafficking of Plaintiff C.K. . . . ."); (*id.*, ¶ 84) (alleging, vaguely and with no factual support, that IHC "knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture."). In fact, each and every allegation against IHC with word "venture" in it, is accompanied by some form of the conclusory assertion that IHC was "involved," "facilitated, or "participated" in a "sex trafficking venture." (*Id.*, ¶¶ 5, 8, 13, 84, 86, 99).[5]

Faced with nearly identical allegations of "participation" in a TVPRA claim, the Southern District of New York in the *Noble* case stated: "Plaintiff makes several conclusory allegations about Robert's involvement in Harvey's conduct. The Amended Complaint alleges that Robert 'facilitated' and 'pa[id] for' Harvey's travel in interstate commerce, that he 'knowingly benefited from' Harvey's violation of Section 1591, and that he 'paid for prior settlements of claims made

---

[5] The Complaint also does not allege facts sufficient to support a plausible inference that IHC subjectively believed there was a high probability that Plaintiff was being trafficked, or that IHC took deliberate steps to avoid confirming that Plaintiff was being trafficked. *See, e.g., Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (holding that "willful blindness" has "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact"). In fact, due to the lack of the specific allegations against IHC, the Complaint does not plausibly allege that IHC was even aware of or interacted with Plaintiff or her alleged trafficker. Nor does the Complaint allege that IHC took deliberate steps to avoid confirming that Plaintiff was being trafficked, let alone specify what those steps may have been. Plaintiff's threadbare allegations as to IHC's purported willful blindness cannot support a claim that IHC "should have known" of Plaintiff's alleged trafficking.

by women against [Harvey].'" *Noble*, 335 F. Supp. 3d at 524 (alterations in original). These conclusory allegations were insufficient to survive a motion to dismiss. *Id.* (finding "[w]hat is required here, and what is missing, are factual allegations of participation that render a violation of Section 1591(a)(2) by Robert plausible on its face" because there were no "factual allegations that link Robert's actions to Harvey's 2014 conduct toward Noble."). Similarly, what is missing in the instant case are factual allegations linking the conduct of Plaintiff's trafficker's to IHC. "Participated in a venture" in violation of the TVPRA has not been sufficiently pleaded, and as in *Noble*, Plaintiff's Complaint should be dismissed.

> 2.    Plaintiff Has Not Pleaded Facts Sufficient to Suggest that IHC "Knowingly Benefitted Financially or By Receiving Anything of Value"

The Complaint does not adequately allege that IHC "knowingly benefitted" from alleged trafficking because there must be "a causal relationship" between a defendant's "affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or . . . constructive knowledge of that causal relationship." *Geiss*, 383 F. Supp. 3d at 169 (emphasis added). The TVPRA requires a "knowing" benefit, which is something more than receipt of an incidental benefit. A knowing benefit does not include a hotel franchisor that receives payments from a franchisee under a franchise agreement where that franchisee happened to let a room to a guest that turned out to be a sex trafficker.

In *Geiss*, The Weinstein Company Holdings, LLC ("TWC") was sued under the TVPA as a result of its employment relationship with the accused sex trafficker, Harvey Weinstein. *Id.* at 169. The court found that TWC "undoubtedly benefitted" from Mr. Weinstein's continued employment with TWC because his "movies and influence generated revenue, and some of that revenue flowed to TWC's officers and directors." *Id.* But the fact that revenue ultimately flowed to the defendant was insufficient to show a "knowing benefit" under the TVPRA. *Id.* Rather, the

"controlling question" was whether Mr. Weinstein "provided any of those benefits to TWC <u>because of</u> TWC's facilitation of H. Weinstein's sexual misconduct" as opposed to because of his employment with the company alone. *Id.* (emphasis in original). In granting TWC's motion to dismiss the Section 1595 claim, the court found there were no facts alleged to support such a conclusion and that, "[t]o the contrary, plaintiffs' allegations suggest that H. Weinstein benefited TWC <u>in spite</u> of his alleged predations . . . ." *Id.* at 169-70 (emphasis added).

Here, Plaintiff relies on the same argument rejected in *Geiss*. The Complaint alleges that "because C.K.'s trafficker frequented the Defendants' hotels" and "IHG receives a percentage of the gross room revenue from the money generated by the operations of Crowne Plaza® hotels," IHC "knowingly benefitted financially from said exploitation." (Doc. No. 1, ¶¶ 13, 85). As in *Geiss*, however, these allegations do not show IHC "knowingly benefitted financially" from Plaintiff's trafficking because any benefits IHC purportedly incurred were necessarily "in spite of" and not "because of" such trafficking. There are no facts alleged in the Complaint that show the alleged trafficker booked a room in the subject Crowne Plaza hotel <u>because of</u> IHC's (the purported franchisor's) alleged affirmative acts of facilitation of sex trafficking

IHG spends considerable time, money, and other resources devoted to protecting human rights and preventing human trafficking. *See, e.g.,* (*Id.*, ¶ 13 n.5). Incidents of human trafficking pose a serious risk not only to the victims of trafficking and other hotel guests, but also to IHG brands and to the reputation of all IHG-affiliated companies. The Complaint is devoid of alleged facts to show that IHG, or its affiliated companies like IHC, benefitted from or are in a better position because of human trafficking. Any benefits that allegedly ultimately flowed to IHC from Plaintiff's trafficking necessarily occurred "in spite of," rather than "because of," the actions of

Plaintiff's trafficker. *Geiss*, 383 F. Supp. 3d at 169-70.[6]

### 3.  Plaintiff Fails to Adequately Allege IHC Knew or Should Have Known of An Act in Violation of the TVPRA

IHC also cannot be liable under 18 U.S.C. § 1595(a) because Plaintiff fails to properly allege facts to show that IHC "knew or should have known" that the alleged sex trafficking at issue was actually occurring. Federal courts have generally associated the "knew or should have known" standard with actual knowledge or reckless disregard. *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (referencing reckless disregard on a Section 1595 claim).

*First*, the Complaint does not adequately allege actual knowledge. The Complaint repeats the conclusory statement that IHC, the purported franchisor, "knew" about Plaintiff's trafficking. *See, e.g.* (Doc. No. 1, ¶ 13) (alleging "IHG knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking."); (*id.*, ¶ 85) (alleging Defendants "knew or should have known, that C.K. was being trafficked and that the Defendants were knowingly benefiting financially from said

---

[6] The Southern District of Ohio has suggested that "the rental of a room [alone] constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019). This holding is erroneous for a number of reasons. First, the court applied the incorrect pre-*Iqbal* pleading standard to the defendant's motion to dismiss in that case. *Id.* at *1. Second, the decision improperly removes the knowledge requirement from the "knowingly benefit financially" element of the statute. Under the *G6 Hospitality* court's incorrect statutory construction of the TVPRA, a defendant need only *receive* money to constitute a "knowing benefit." But there is a reason Congress chose to include the word "knowing" before "benefit"; otherwise, it could have simply written the statute to require "a benefit." Congress's inclusion of the word "knowing" therefore has to mean something because the TVPRA cannot be interpreted to render the word "knowing" void. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (stating that a court should construe a statute so that "no clause, sentence, or word" is rendered "superfluous, void, or insignificant.") (internal quotation marks omitted). The *G6 Hospitality* case, and others like it decided in the same court, were wrongly decided and should not be followed in this District. To follow this line of reasoning would essentially convert Section 1595(a) into a strict liability statute. In contrast, the *Geiss* court properly construed the "knowingly benefit financially" language when it found that financial benefits *alone* are not enough to meet this element of a TVPRA claim.

exploitation, because C.K.'s trafficker . . . frequented the Defendants' hotels."). But without facts to support these allegations, they are nothing but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Mansor v. JPMorgan Chase Bank, N.A.*, 183 F. Supp. 3d 250, 275 (D. Mass. 2016) (dismissing allegations that a bank "knew or ought to have known" information alleged where there were "no facts" alleged indicating the bank "was aware of such information.").

*Second,* there are also no well-pleaded allegations supporting any claim that IHC, the purported franchisor, should have known about or recklessly disregarded Plaintiff's trafficking. It is not enough for Plaintiff to allege that "Defendants" have some generalized knowledge that trafficking sometimes occurs in hotels. *Compare* (Doc. No. 1, ¶ 55) (alleging that Defendants "have been on notice of repeated incidences of sex trafficking" at their hotels), *with Ratha*, 2017 WL 8293174, at \*5 ("Plaintiff's argue that Rubicon and Wales knew or should have known that Phatthana [] engaged in [human trafficking] based on general reports about human trafficking in Thailand and reports and letters by advocacy groups . . . . Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed . . . ."). For the same reason, Plaintiff's allegations concerning purported trafficking at other Crowne Plaza® branded hotels does not sufficiently show that IHC, the purported franchisor, had actual knowledge of Plaintiff's alleged sex trafficking. (Doc. No. 1, ¶ 60).

Moreover, except where the plaintiff is a minor, Section 1595(a) requires factual allegations plausibly suggesting that a defendant should have known that the plaintiff was being forced or coerced to commit commercial sex acts against the plaintiff's will. *See* 18 U.S.C. 1595(a). It is insufficient to allege generally that a defendant should have known that the plaintiff was participating in commercial sex activity. *See id.* Plaintiff's Complaint, however, is entirely devoid

- 11 -

of factual allegations plausibly suggesting that even the alleged franchisee should have known that Plaintiff was being forced or coerced to commit commercial sex acts against her will.

Plaintiff here does not allege any facts that "should have alerted" <u>IHC</u> to Plaintiff's trafficking. In other words, Plaintiff has not alleged any facts to show that IHC, the purported franchisor, knew or should have known of the fact that trafficking was occurring at the Hotel, or that the trafficker would use force, fraud, or coercion to cause Plaintiff to engage in commercial sex acts. Plaintiff's TVPRA claim against IHC must be dismissed absent such factual allegations.[7],[8]

**B.    Plaintiff's Allegations of Vicarious Liability Against IHC Are Insufficient As a Matter of Law**

    1.    <u>The Complaint Does Not Properly Allege Actual Agency, Nor Can a TVPRA Claim Be Premised On An Alleged Franchising Relationship</u>

Plaintiff has failed to plead facts sufficient to allege that IHC, as a purported franchisor, or as an alleged principal in an agency relationship with the franchisee, is liable for the alleged acts of the franchisee hotel owner. Under Florida law, it is "well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee." *Cain v. Shell Oil Co.*, 994 F. Supp. 2d 1251, 1254 (N.D. Fla. 2014) *see also, e.g.,*

---

[7] Even if the Court accepted that IHC was somehow the franchisor, owner, supervisor, and/or operator of the Hotel all at the same time, Plaintiff's claims under any of those theories fail to state a claim on her TVPRA claim because the TVPRA is not a strict liability statute that automatically makes an "owner" or "operator" liable—Plaintiff still must allege sufficient facts demonstrating a plausible claim for relief, which she has not done.

[8] On February 7, 2019, the Honorable Judge William M. Ray II of the Northern District of Georgia heard oral argument on motions to dismiss in four cases where "Jane Doe" plaintiffs asserted TVPRA claims against various franchisor-defendants, but the plaintiffs in those cases also sued the franchisee/operators of the individual hotels. *See, e.g., Jane Doe 1 v. Red Roof Inns, Inc.*, Case No. 1:19-cv-03840-WMR (Doc. No. 241) (a copy of the Minute Sheet for Judge Ray's oral ruling is attached hereto as **"Exhibit A."**). Judge William M. Ray II granted the franchisor-defendants' motions to dismiss the TVPRA claims because the Court did "not find the plausibility of the facts alleged." (*Id.*, p. 2). Judge Ray's oral order left the franchisee defendants in the case. (*Id.*).

*Howell v. Chick-Fil-A, Inc.*, No. 92-30188-RV, 1993 WL 603296, at *2 (N.D. Fla. Nov. 1, 1993) (stating "[o]rdinarily" a franchisor "is not liable for the actions of [its franchisee].""). In Florida, a franchisor is not liable for the actions of its franchisee where it does not possess day-to-day control over the franchisee's operations. *Id.*

The Complaint itself demonstrates that IHC, as the purported franchisor, did not have the requisite level of control to create an actual agency relationship with the owner of the franchised hotel. Here, Plaintiff claims that IHC, as the purported franchisor, controlled the day-to-day operations of the Hotel. (Doc. No. 1, ¶ 60). These allegations, however, are mere conclusions. (*Id.*) (alleging IHC controls daily operations of all Crowne Plaza franchises "through one or more of the following actions," which list then ends with the following catch-all allegation: "other actions that deprive Crowne Plaza® hotels of independence in business operations."). On a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 557).

Plaintiff's allegations concerning IHC's purported control of booking and room reservations on its web-site, standardization of training methods, and regular inspections of its franchisee's properties are merely proper controls that a franchisor can take to control its brand and ensure uniformity of service, while not entering into an agency relationship with its franchisee. *See, e.g.,* (Doc. No. 1, ¶ 60). In Florida, and elsewhere, a franchisor merely ensuring the uniformity and standardization of services does not give rise to an agency relationship.

For example, in *Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270 (Fla. 4th DCA 2009), Florida's Fourth District Court of Appeal affirmed dismissal of a complaint against a franchisor at the motion to dismiss stage where a decedent's estate sued the franchisor after a fatal shooting at the franchisee's restaurant. *Id.* at 1270. The *Hollywood Subs* court found that "the only control

provided by the [franchise] agreement was to insure uniformity in the standardization of products and services offered by the restaurant." The court continued, "[t]he day to day operations were within the sole control of the franchisee." *Id.* Accordingly, the court held that "the franchise agreement on which plaintiff relied to state a cause of action based on agency <u>did not make the franchisor responsible for this type of incident</u> . . . ." *Id.* (emphasis added); *accord Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 88 (S.D.N.Y. 2000) (observing that "[m]ost courts have found that retaining a right to enforce standards or to terminate an agreement for failure to meet standards" does not create an agency relationship); *Cain v. Shell Oil Co.*, 994 F. Supp. 2d 1251, 1254 (N.D. Fla. 2014) (drawing a distinction between maintaining uniformity and product quality versus control over day-to-day operations). Therefore, the allegations in the Complaint that the Hotel owner in this case was "required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement" have no bearing on the question of liability in this case. (Doc. No. 1, ¶ 51); *cf. Hollywood Subs, Inc.*, 997 So. 2d at 1271; *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1041 (M.D. Fla. 2009) (finding no agency relationship where franchise agreement imposed conditions "typical of a franchise relationship," including use of franchisor's reservation system).

Similarly, Plaintiff's allegations of periodic inspection rights or the right to terminate are not sufficient to establish an agency relationship. *Compare* (Doc. No. 1, ¶ 52), *with Hollywood Subs, Inc.*, 997 So. 2d at 127; *Dunkin' Donuts*, 105 F. Supp. 2d at 88 (finding the "right to enforce standards or to terminate an agreement for failure to meet standards is not sufficient control" for agency liability to attach).

This Court would re-write well-established law governing the legal status of franchisors if it allows Plaintiff's attenuated theory of agency liability, and could make franchisors liable for

virtually any harm that occurred at a franchise property.[9]

### 2. The Complaint Does Not Sufficiently Allege Apparent Agency

Plaintiff's conclusory allegations that an "apparent agency also exists between Defendant IHG and Crowne Plaza® hotels" because "Defendant IHG held out Crowne Plaza® hotels to the public as possessing authority to act on its behalf," (Doc. No. 1, ¶ 60), are also nothing more than "legal conclusion[s] couched as a factual allegation." *Twombly*, 550 U.S. at 555.

In order to prove the existence of an apparent agency under Florida law, three elements must be proven: (i) a representation by the purported principal, (ii) a reliance on that representation by a third party, and (ii) a change in position by the third party in reliance on the representation. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995). With regard to the first element, the plaintiff must show that the purported principal represented to her or acted in such a way as to lead her to believe that the purported agent was, in fact, its agent. *Vermeulen v. Worldwide Holidays, Inc.*, 922 So. 2d 271, 275 (Fla. 3d DCA 2006). In *Bransford*, the Florida Supreme Court explained:

> In today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions. Nor does the provision of routine contractual support services refute this

---

[9] Courts routinely dismiss similar allegations against franchisors at the motion to dismiss stage. *See, e.g., Cha v. Hooters of Am., LLC*, No. 12-CV-4523(DLI)(JMA), 2013 WL 5532745, at *3 (E.D.N.Y. Sept. 30, 2013) ("claiming that a franchisor will train a franchisee and assist in its operation" was insufficient to establish agency relationship); *Andrade v. Arby's Rest. Grp., Inc.*, Case No. 15-cv-03175 NC, 2015 WL 6689475, (N.D. Cal. Nov. 3, 2015) (conclusory allegations that defendants controlled employee work conditions insufficient); *Acharya v. 7-Eleven, Inc.*, No. 1:18-cv-08010-PAC, 2019 WL 6830203, at *3 (S.D.N.Y. Dec. 13, 2019) (allegations that a franchisor created and implemented policies at franchise location, had the right to train the franchisee's employees, and monitored the employees' work was insufficient to render the franchisor liable under the Fair Labor Standards Act); *Bricker v. R&A Pizza, Inc.*, 804 F. Supp. 2d 615, 622 (S.D. Ohio 2011) ("[A] conclusory statement of a legal proposition [such as defendants were agents of another entity] without any supporting factual allegations to demonstrate its plausibility" is insufficient to allege agency).

conclusion.

*Bransford*, 648 So. 2d at 120. To the contrary, to establish liability by apparent agency, the circumstances must be such as "to communicate to the plaintiff the idea that the franchisor is exercising substantial control." *Id.* at 121.

The Complaint does not contain allegations to satisfy these elements. Plaintiff makes no allegations of improper actions or negligence by IHC in purportedly generating the perception that the independent Hotel owner was an agent of IHC. Plaintiff's lone conclusory allegation that "Defendant IHG held out Crowne Plaza® hotels to the public as possessing authority to act on its behalf" does not plausibly describe how IHC represented this to Plaintiff or acted in such as way so as to lead her to rely on the fact that the hotel owner was, in fact, IHC's agent. The Complaint does not allege any facts to meet the apparent agency standard under Florida law and should be dismissed.

## C.   Plaintiff's Complaint is an Impermissible Shotgun Pleading Which Does Not Properly Distinguish Between the Alleged Acts of Each Defendant

Plaintiff's Complaint is the quintessential shotgun pleading. Plaintiff names as defendants five separate "hospitality companies," which she alleges operate entirely separate "brands." (Doc. No. 1, ¶¶ 10-14). Yet many of the allegations in the Complaint lump the defendants together. This impermissible method of pleading unfairly prejudices IHC because neither IHC nor the Court can determine what Plaintiff is alleging specifically against IHC, as opposed to "Defendants," generally. Under this pleading tactic, for example, it is unclear which of "Defendants'" officers, directors, agents, or employees are being referred to, and what "act, deed, or conduct" they are responsible for. *See, e.g., (id.,* ¶ 7, 64, 71, 82, 84, 85, 88, 99) (allegations against "Defendants" together). Shotgun pleading has been repeatedly condemned in this Circuit. *See, e.g., Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding "quintessential shotgun pleading" where

complaint was "replete with allegations that 'the defendants' engaged in certain conduct . . . though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."); *Byrne v. Nezhat*, 261 F.3d 1075, 1128-34 (11th Cir. 2001) (holding that a shotgun pleading "wreak[s] havoc on the judicial system," "wast[es] scarce judicial and parajudicial resources" and "impedes the due administration of justice and, in a very real sense, amounts to obstruction of justice").

Plaintiff's allegations and claims brought against all five "Defendants" violate Federal Rule of Civil Procedure 8. And because her claim "incorporates each foregoing allegation," (Doc. No. 1, ¶ 97), it is impossible for IHC or the Court to determine which allegations relate to conduct Plaintiff specifically attributes to IHC, rather than to the other Defendants. For this reason, Plaintiff's Complaint must be dismissed.[10]

## V.    CONCLUSION

The Complaint fails to state a claim upon which relief can be granted under the TVPRA. Indeed, the allegations are insufficient to show that IHC was complicit in or participated in any venture where it knowingly benefitted from Plaintiff's alleged trafficking. For the foregoing reasons, IHC respectfully requests the Court dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[10] Plaintiff alleges in passing that she is also attempting to assert a claim pursuant to "Fla. Stat. § 772.104." (Doc. No. 1, ¶ 3). Plaintiff makes no additional factual allegations supporting or references to this statute in her Complaint, and therefore IHC understands Plaintiff is not actually advancing a claim pursuant to this Florida Statute. To the extent Plaintiff is intending to assert such a claim, the Court should dismiss it because Plaintiff fails to state a claim. *See, e.g. Nahid v. Bank. of Am. Corp.*, Case No. 1:11-cv-04177-CAP-RGV, 2012 WL 13133644, at *3 (N.D. Ga. Apr. 23, 2012) (finding "the mere mention of the word discrimination is insufficient to state a plausible claim.").

This 20th day of February, 2020.

Respectfully submitted,

**WICKER SMITH O'HARA McCOY & FORD, P.A.**

*/s/* Michael A. Holtmann

Michael A. Holtmann
Florida Bar No. 981184
2800 Ponce de Leon Blvd Ste. 800
Coral Gables, FL 33134-6913
Telephone: (305) 461-8770
Facsimile: (305) 441-1745
mholtmann@wickersmith.com

**HOLLAND & KNIGHT LLP**

William N. Shepherd
Florida Bar No. 88668
222 Lakeview Avenue
Suite 1000
West Palm Beach, FL 33401
Telephone: (561) 883-2000
Facsimile: (561) 650-8399
William.shepherd@hklaw.com

John M. Hamrick
Georgia Bar No. 322079
(*pro hac vice* application pending)
1180 West Peachtree Street, NW
Suite 1800
Atlanta, GA 30309
Telephone: (404) 817-8500
Facsimile: (404) 881-0470
john.hamrick@hklaw.com

*Counsel for Inter-Continental Hotels Corporation*

# Exhibit A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**1:19-cv-03840-WMR   Jane Doe 1 v. Red Roof Inns, Inc. et al**
**1:19-cv-03841-WMR   Jane Doe 2 v. Red Roof Inns, Inc. et al**
**1:19-cv-03843-WMR   Jane Doe 3 v. Red Roof Inns, Inc. et al**
**1:19-cv-03845-WMR   Jane Doe 4 v. Red Roof Inns, Inc. et al**

## Honorable William M. Ray, II

Minute Sheet for proceedings held In Open Court on 02/07/2020.

TIME COURT COMMENCED: 9:00 A.M.
TIME COURT CONCLUDED: 12:00 P.M.
TIME IN COURT: 3:00
OFFICE LOCATION: Atlanta

COURT REPORTER: Wynette Blathers
DEPUTY CLERK: Jennifer Lee

PROCEEDING CATEGORY:   Status Conference(Motion Hearing Non-evidentiary);

MINUTE TEXT:   The Court stated any motions to dismiss not filed by the deadline will be denied as moot. The Court first hears from each franchise defendant and limits oral argument to 10 minutes per motion. Nicole Perry argued first for the Hilton defendants. Sara Turner argued for Choice Hotels. David Sager argued for Wyndham, Microtel, Ramada and La Quinta. Charles Reed for Red Roof Inns, Inc. confirmed they did not file a motion to dismiss. The Court informed Emily Adams for ESA Defendants that their motion to dismiss would not be argued as it was filed one day late.

Tiana Mykkeltvedt, John Floyd and Jonathan Tonge, Manoj Varghese presented counter argument for Plaintiffs. The Court heard from owner/operator filers - David Sager for CPLG entities, LQ Management, LLC; Sabrina Atkins for JHM, Laxmi Druid Hills and Auro Hotels. Plaintiffs responded with counter argument. The Court rules the timely motions to dismiss filed by the franchisers and argued today will be GRANTED without prejudice. The Court does not find plausibility of facts alleged. However, the Court is open to reconsidering the dismissal of these defendants if Plaintiffs can reveal new facts via discovery. The Court further orders that all Defendants being dismissed still owe discovery as already requested by Plaintiffs and no third party subpoenas will be required. The Court reminds parties that no one is dismissed until an official order is entered. The Court asks counsel for each group of Defendants receiving a dismissal to prepare proposed orders (3 total) and email to the Court in Word format within 14 days from today. The Court orders Plaintiffs to file a Second Amended Complaint 14 days after the entry of the order ruling on the motions to dismiss. On or after April 1, 2020, motions for judgment on the pleadings will be allowed, but there may be no more motions to dismiss filed in this case. The Court will term the existing motions for judgment as moot. As to the individual owners/ operators, the Court finds there are sufficient grounds to let the claims proceed. The Court suspends the need for Defendants to file an Answer to the Second Amended Complaint but if any Defendant has not previously appeared, their Answer is due. The Court inquired as to whether Plaintiffs will seek to stay this litigation if they appeal today's ruling, and Plaintiffs stated they will not stay this case if they decide to file an appeal. The Court states any discovery disputes can be addressed at the March status conference, but if there is no need for a conference, parties may contact chambers and the status conference will be canceled. Hearing adjourned.

HEARING
STATUS:                Hearing Concluded