**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| C.K., an individual, | |
| Plaintiff, | |
| v. | Case No. 3:19-cv-01412-MMH-MCR |
| WYNDHAM HOTELS AND RESORTS, INC., *et al*. | |
| Defendants. | |

**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S**
**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 3

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ................................................................................................................ 6

    I.      PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL
           SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO
           ALLEGE A PLAUSIBLE CLAIM ........................................................... 6

          A.      PLAINTIFF FAILED TO ALLEGE THAT MARRIOTT
                 INTERNATIONAL "KNEW OR SHOULD HAVE KNOWN"
                 ABOUT THE SEX TRAFFICKING OF C.K… ....................................... 7

          B.      PLAINTIFF FAILED TO ALLEGE THAT MARRIOTT
                 INTERNATIONAL "KNOWINGLY" BENEFITTED FROM A
                 SEX TRAFFICKING VENTURE ............................................................ 9

          C.      PLAINTIFF FAILED TO ALLEGE MARRIOTT
                 INTERNATIONAL'S "PARTICIPATION" IN A "SEX
                 TRAFFICKING VENTURE" ................................................................ 10

          D.      PLAINTIFF'S COMPLAINT RELIES ON IMPERMISSIBLE
                 "COOKIE-CUTTER" ALLEGATIONS, TRANSPLANTED
                 FROM THE PLEADINGS OF OTHER, UNRELATED
                 LITIGANTS .................................................................................. 12

    II.     PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL
           SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE
           THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE
           FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE FOUR
           POINTS BY SHERATON JACKSONVILLE BAYMEADOWS OR THE
           STAFF AT THE SHERATON JACKSONVILLE ............................................... 14

    III.    PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL
           SHOULD BE DISMISSED BECAUSE IT RELIES ON
           IMPERMISSIBLE GROUP PLEADING ............................................................ 16

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings, Inc., et al.*, No. 3:19-cv-1992 (D. Or. 2019)..................12

*A.B. v. Marriott International, Inc.*, No. 1:19-cv-5770 (E.D. Pa. 2019) ......................................12

*Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176 (C.D. Cal. 2015)........................15

*All Seasons Condominium Ass'n, Inc. v. Patrician Hotel, LLC*, 274 So.3d 438 (Fla. 3d
   DCA 2019) ..............................................................................................................................14

*Altimas v. Whitney*, No. 2:09-cv-682-FtM-36SPC, 2011 WL 11507244 (M.D. Fla. Dec. 9,
   2010) ........................................................................................................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................................5, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................5, 13

*Canosa v. Ziff*, 18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)......................10

*Cha v. Hooters of America*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y.
   Sept. 30, 2013).......................................................................................................................15

*Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp.
   2d 211 (S.D.N.Y. 2011)...........................................................................................................13

*Estate of Miller v. Thrifty Rent-A-Car Sys. Inc.*, 637 F. Supp. 2d 1029, 1041 (M.D. Fla.
   2009) ......................................................................................................................................16

*Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL
   1587477 (M.D. Fla. Mar. 31, 2018)..........................................................................................7

*Geiss v. Weinstein Co. Holdings LLC*, No. 17 CIV. 9554 (AKH), 2019 WL 1746009
   (S.D.N.Y. Apr. 18, 2019)..........................................................................................................11

*K.B. v. International Hotels Corporation, et al.*, No. 1:19-cv-1213 (D. N.H. 2019) ...................13

*Lawson v. Rubin*, No. 17 Civ. 6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) .........8

*M.A. v. Wyndham Hotels & Resorts Inc., et. al.*  Case No. 2:19-CV-849, 2019 WL
   4929297 (S.D. Ohio Oct. 7, 2019).......................................................................................8, 9

*Madison v. Hollywood Subs, Inc.*, 997 So.2d 1270 (Fla. 4th DCA 2009) ...............................14, 15

*Misko v. Speedway, LLC*, 16-CV-13360, 2018 WL 2431638 (E.D. Mich. May 29, 2018)............7

iii

*Mobil Oil Corp. v. Bransford*, 648 So.2d 119 (Fla. 1995)............................................................16

*Muhammad v. Bethel-Muhammad*, No. 11-0690, 2012 WL 1854315 (S.D. Ala. May 21, 2012) ............................................................................................................................13

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................................11

*N.T. v. Taco Bell Corp.,* No. 19-1028, 2019 WL 4168807 (D. Kan. Sept. 3, 2019) ....................15

*Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260 (M.D. Fla. 2009) ........................................................................................................................6, 16

*Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ................................................................................7, 11

*Shabazz v. Bank of America*, No. 1:10-cv-0813, 2010 WL 11647333 (N.D. Ga., Oct. 26, 2010) .............................................................................................................................13

*Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) .........15

*United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016) ..................................................10, 11

*United States v. Coppin*, 1 F. App'x 283, 288 (6th Cir. 2001) ....................................................11

*United States v. Longoria*, 569 F.2d 422 (5th Cir. 1978) ............................................................11

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ..........................17

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ......................................................................................17

Federal Rule of Civil Procedure 12(b)(6) ................................................................................1, 5

**Statutes**

18 U.S.C 1591.................................................................................................................................6

18 U.S.C 1595(a) ...............................................................................................................6, 7, 9, 10

iv

Defendant Marriott International, Inc. ("Marriott International"), moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing plaintiff C.K.'s (the "Plaintiff" or "C.K.") Complaint (ECF No. 1, hereinafter, the "Complaint" or "Compl.") in its entirety, with prejudice, because it fails to state a claim upon which relief can be granted.

## **INTRODUCTION**

The single claim against Marriott International under the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA") should be dismissed for at least three principal reasons.

*First*, the Complaint fails to plead facts sufficient to state a claim that Marriott International knowingly benefitted from and participated in the trafficking of C.K.  The gravamen of the Complaint is that the hospitality industry has turned a blind eye to trafficking and Marriott International is part of that industry.  But other than alleging Marriott International owns the Four Points by Sheraton brand, which was licensed to the independent owners and operators of two different hotels in Jacksonville, the Complaint lacks any specific facts that Marriott International knew, should have known, or even plausibly could have known that C.K. was being coerced by criminals into performing commercial sex acts against her will.  The Complaint lists several news reports in an attempt to allege Marriott International should have been generally aware that sex trafficking can occur at hotels, but those reports, among other problems: (i) *are all dated years after 2012*, long after C.K. escaped from her trafficker; (ii) are all from hotels located in California, not Florida, and (iii) are irrelevant to the allegations C.K. asserts here.  And as to Marriott International's knowledge of C.K. specifically, the Complaint says nothing.  Most importantly, it does not even allege that C.K. had any contact or interactions with employees of either of the subject Four Points by Sheraton hotels, who were not Marriott International employees (much less

1

any contact with actual Marriott International employees) that might have put Marriott International on notice of the crimes committed against C.K.  It also lacks any factual allegations that Marriott International participated in the trafficking of C.K.

To the contrary, if anything, the factual allegations in the Complaint contradict that conclusion.  The Complaint alleges that C.K. was victimized by an unnamed sex trafficking ring which took drastic measures to conceal its crimes, including subjecting C.K. to torture, intimidation, and bondage, and restricting her access to phones to prevent anyone from discovering or interfering with the criminal scheme.  In other words, even by the Complaint's own lights, *C.K.'s traffickers successfully prevented Marriott International (or anyone else) from learning of their crimes.*

*Second*, the Complaint fails to plead sufficient facts to hold Marriott International vicariously liable for the acts or omissions of the staff at either of the Four Points by Sheraton Jacksonville Baymeadows or at the Sheraton Jacksonville hotel.  C.K.'s trafficking allegedly occurred at the Four Points by Sheraton Jacksonville Baymeadows and at the Sheraton Jacksonville[1] hotels, both franchise hotels that were independently owned and managed by non-parties to this action.  Marriott International did not own or operate these hotels or employ any individuals at the hotels.  The Complaint alleges that Marriott International is vicariously liable for the acts or omissions of the franchisee or management company at the hotel because it had the right to enforce uniform standards under a franchise agreement, and to terminate that agreement if

---

[1] The Complaint alleges that Plaintiff was trafficked at a Four Points by Sheraton hotel located at 10605 Deerwood Park Boulevard in Jacksonville.  The hotel that is operated at this address is actually a Sheraton brand hotel, not a Four Points by Sheraton hotel.  *See* https://www.marriott.com/hotels/travel/jaxsi-sheraton-jacksonville-hotel/?scid=bb1a189a-fec3-4d19-a255-54ba596febe2 (last accessed February 4, 2020).

the hotel breached it.  As a matter of Florida law, however, this cannot create an agency relationship sufficient to establish vicarious liability.

*Third*, the Complaint is replete with impermissible group pleading allegations that do not satisfy the notice pleading requirements of the Federal Rules of Civil Procedure.  The Complaint seeks to challenge the hotel industry generally for failing to stop sex trafficking, but does not allege facts that are specific to actions by Marriott International.  To be clear, Marriott International has been an industry leader in addressing human trafficking, including developing and implementing training at hotels around the world, and condemning all forms of human trafficking and sexual exploitation.  *See* Compl. ¶ 41 and n.23 ("Marriott supports the elimination of all forms of forced, bonded or compulsory labor and provides associate training on human trafficking awareness and prevention").  But this case is not about the hospitality industry and human trafficking in general.  It is about C.K. and the specific claim she is asserting in this lawsuit.  While the allegations of the crimes committed against C.K. by an *unnamed trafficker* who has since been arrested, prosecuted and sentenced for his crime, are horrific, these allegations do not state a cause of action under the TVPRA against *Marriott International*.

## FACTUAL BACKGROUND

This lawsuit is part of a nationwide wave of dozens of cases filed in late 2019 and early 2020 using a boiler-plate form complaint seeking to hold hospitality industry participants liable under the TVPRA for sex trafficking.  While the plaintiffs and defendants vary in each case, the lengthy complaints are virtually identical in their conclusory allegations: they allege the hospitality industry has turned a blind eye to sex trafficking; they assert that various defendant franchisors "control" the hospitality industry and therefore "participate" in sex trafficking at hotels; they list reports of sex trafficking at different hotels throughout the country; and they conclude with brief allegations about the criminal trafficker's acts against the plaintiff in each case.  Although the

allegations regarding each plaintiff's victimization by her traffickers are typically horrifying, the allegations against Marriott International are vague and conclusory.[2]

The Complaint here follows this form.  It focuses on the phenomenon of sex trafficking generally, but includes just a few, conclusory allegations against Marriott International in relation to C.K.  For example, the Complaint cites statistics, news articles, and policy reports on human sex trafficking (Compl. ¶¶ 22-47), generalities concerning the franchisors' alleged "control" over the hospitality industry (Compl. ¶¶ 48-54), and their alleged awareness of sex trafficking crimes committed in other states (Compl. ¶¶ 55-60).  None of this relates to the alleged criminal incidents carried out against C.K. by her traffickers or her civil claim against the franchisors.

When it comes to telling C.K.'s story, the Complaint tells a disturbing tale of her kidnapping and victimization by an unnamed criminal sex trafficker.  Between 2008 and 2012 when C.K. escaped, her trafficker forced C.K. to engage in commercial sex acts against her will in various hotels in the Jacksonville, Florida area, including allegedly a Four Points by Sheraton and Sheraton Jacksonville hotel.  Compl. ¶¶ 61-80.  The Complaint also alleges that C.K. was arrested for prostitution at the Four Points Sheraton Jacksonville Baymeadows hotel in 2008 but returned to her trafficker after he bailed her out of jail.  Compl. ¶ 68.  The traffickers concealed their crimes through physical and psychological violence and coercion, restriction of access to telephones, and surveillance, and preventing C.K. from leaving the hotel rooms alone, thereby eliminating her direct contact with any hotel staff.  Compl. ¶¶ 61, 63, 67.  Indeed, the Complaint does not allege a single interaction between C.K. and any hotel staff member.

---

[2] The attempt to hold the hospitality industry parties liable generally through consolidated proceedings has been denied.  *In re Hotel Industry Sex Trafficking Litigation*, MDL No. 2928, ECF No. 235 (J.P.M.L. Feb. 5, 2010).

The Complaint then asserts the bare legal conclusion that Marriott International somehow knew or should have known about the criminal acts by the trafficking ring but provides no facts to support that conclusion.  Compl. ¶¶ 84-86.  And without stating any facts to suggest how it could have known about these crimes, the Complaint further asserts the conclusion that Marriott International failed to take "reasonable measures" that somehow would have revealed the criminal sex trafficking ring and prevented the traffickers' criminal acts against C.K.  Compl. ¶ 90. Nowhere does the Complaint allege facts suggesting that Marriott International was aware of the criminal incidents or participated in the sex trafficking of C.K.

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), courts require a plaintiff to allege facts that "state a claim for relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Id.*  Although factual allegations are accepted as true, "labels and conclusions" are given no deference.  *Twombly*, 550 U.S. at 545 (internal citations omitted).  Allegations made against groups of defendants, moreover, cannot withstand challenges under Rule 12(b)(6) because such allegations deprive each individual defendant of fair notice of what it is alleged to have done.  *See, e.g.*, *Altimas v. Whitney*, No. 2:09-cv-682-FtM-36SPC, 2010 WL 11507244, at *1 (M.D. Fla. Dec. 9, 2010) ("A complaint may fail to satisfy this notice standard when it groups numerous defendants together and fails to distinguish

each defendant's conduct from the conduct of the others."); *Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271 (M.D. Fla. 2009).

**ARGUMENT**

**I.**      **PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ALLEGE A PLAUSIBLE CLAIM.**

In enacting the TVPRA, Congress criminalized sex trafficking by force, fraud or coercion.

18 U.S.C. § 1591.  Congress also created a civil remedy against both perpetrators of sex trafficking crimes and those who knowingly participate in sex trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added).  The Complaint does not allege that Marriott International was a "perpetrator" of the trafficking of C.K.  Rather, it alleges in a conclusory manner that Marriott International knowingly benefitted from and participated in a venture by an unnamed criminal sex trafficker.  The Complaint is fatally defective, however, because it does not (and cannot in good faith) allege any facts suggesting that Marriott International plausibly knew or should have known about C.K.'s tormentors or knowingly benefitted from their crimes, let alone "participated" in those crimes.  Additionally, the Complaint relies on impermissible group allegations which give no notice of what Marriott International is alleged to have done relating to the alleged criminal acts against C.K.

### A. PLAINTIFF FAILED TO ALLEGE THAT MARRIOTT INTERNATIONAL "KNEW OR SHOULD HAVE KNOWN" ABOUT THE SEX TRAFFICKING OF C.K.

The gravamen of the Complaint is that Marriott International "knew or should have known" (18 U.S.C. § 1595(a)) that C.K. was being victimized by a criminal sex trafficker between 2008 and 2012 because "the hospitality industry" is complicit in sex trafficking. *See* Compl. ¶¶ 22-47. These allegations are copied from the other complaints filed throughout the country against different franchisors, and have very little to do with Marriott International or C.K. For example, many of the allegations (as well as sources cited in the footnotes) post-date C.K.'s alleged trafficking, which ended in 2012 (Compl. ¶¶ 40, 42-44); and refer to other hotel companies—one of which is not even a party to this case (*see* Compl. ¶¶ 40; 45 (Choice Hotels)). Thus, as a matter of law, these allegations cannot support any plausible inference that Marriott International knew or should have known about the specific instances of C.K.'s sex trafficking. *See*, *e.g.*, *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *5 (C.D. Cal. Dec. 21, 2017) ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana [] engaged in [human trafficking] based on general reports about human trafficking in Thailand and reports and letters by advocacy groups … [but] Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory."); *Misko v. Speedway, LLC*, 16-CV-13360, 2018 WL 2431638, at *10 (E.D. Mich. May 29, 2018) ("[G]eneral knowledge that a condition can materialize is not sufficient to create constructive knowledge of the existence of a particular condition at a specific time.") (internal quotations omitted); *accord, Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018) (dismissing TVPRA

claim where complaint did "not include a plausible allegation that Defendants saw the ad concerning Plaintiff Doe and knew it related to illegal sex trafficking").

The Complaint also attempts to establish Marriott International's notice of her trafficking based on several alleged incidents at other Four Points by Sheraton hotels.  Compl. ¶ 57(a)(ix)(1)-(3).  Here again, however, these reports could not have put Marriott International on notice of C.K.'s victimization and are irrelevant to this case because the reports occurred between December 2014 and August 2018, at least two years *after* C.K. escaped from her captors in 2012.

The brief allegations about C.K. likewise lack any relationship to Marriott International.  Even the allegation that C.K. was arrested for prostitution at the Four Points Jacksonville Baymeadows in 2008 (Compl. ¶ 68) is insufficient.  *See Lawson v. Rubin*, No. 17 Civ. 6404 (BMC), 2018 WL 2012869, at *13 (E.D.N.Y. Apr. 29, 2018) ("plaintiffs have not cited any caselaw to support their argument that one visit by the police department and one ambulance sent to the residence over six years is sufficient to put the owner of the premises on notice of illegal activity").  Apart from the reference to her 2008 arrest, every other mention of a franchised hotel is included as part of sweeping allegations spanning four years and involving multiple hotels other than the Four Points or Sheraton hotels.  *See, e.g.,* Compl. ¶¶ 75, 78.  To the extent the allegations say anything about any specific hotel, they refer exclusively to properties other than those included in the Marriott International brand or are generic.  *See* Compl. ¶¶ 63, 65 (Homewood Suites); 76 (Howard Johnson); 64, 71 ("Defendants' hotels").  What's more, the Complaint does not contain a single allegation of any contact between C.K. and any Sheraton or Four Points hotel staff, none of whom were Marriott International employees in any event.

While Plaintiff may seek to rely on a "willful blindness" theory of knowledge as stated *M.A. v. Wyndham Hotels & Resorts Inc., et. al*.  Case No. 2:19-CV-849, 2019 WL 4929297 (S.D.

Ohio Oct. 7, 2019), the lack of factual allegations here shows why any such reliance would be misplaced.  In *M.A.*, the plaintiff alleged several red flags that "should have alerted staff to her situation."  *Id.* at *6.  Among other things, her complaint alleged, for example, that: (1) "[t]he Plaintiff observed some of the same hotel staff over the course of the time she was trafficked for sex at the Defendant hotel properties," (2) "*despite [the plaintiff's] desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to prevent the ongoing and obvious torture she endured* while she was regularly trafficked for sex at Defendants' hotel properties;" and (3) "[t]he plaintiff's trafficker operated the sex trafficking venture out of the same hotel room for multiple days or weeks in succession"  *Id.* at 5 (emphasis added).  In stark contrast, the Complaint fails to allege *any* such "red flags," particularly with respect to Marriott International.  To the extent that there are even minimal allegations regarding interactions between C.K. and hotel staff (which, in any event, do not rise to the level of red flags, like ignoring "desperate pleas and screams for help" as in *M.A.*), such allegations refer to properties other than those included in the Marriott International brand.  *See, e.g.,* Compl. ¶ 77.  Thus, even assuming (*arguendo*) that *M.A.*'s "willful blindness" standard reflected a correct application of the TVPRA, that case is inapposite.  Allegations regarding "willful blindness" as they pertain to Marriott International are entirely conclusory.  Compl. ¶ 57.

## B.   PLAINTIFF FAILED TO ALLEGE THAT MARRIOTT INTERNATIONAL "KNOWINGLY" BENEFITTED FROM A SEX TRAFFICKING VENTURE.

Additionally, for the same reasons, Plaintiff's claim must be dismissed because the Complaint does not allege that Marriott International "knowingly" benefitted from a sex trafficking venture.  18 U.S.C. § 1595(a).  Apart from reciting conclusory labels, the Complaint alleges that Marriott International "directly benefitted from the trafficking of C.K. on each occasion they received payment for rooms that she was being kept in [its] hotels."  Compl. ¶ 100.

9

But there are no facts from which Marriott International, the franchisor, had any reason to suspect that the rooms were used to commit sex trafficking crimes as alleged by the Complaint.  *See supra* Part I.A.  As a franchisor, Marriott International receives a royalty from the overall revenues from the business of the franchised hotel.  The collection of rent by an unrelated hotel manager from guests in the ordinary course of business cannot support a reasonable inference that a franchisor such as Marriott International "knowingly" benefited from crimes committed in those rooms.  *See, e.g.*, *Canosa v. Ziff*, 18 Civ. 4115 (PAE), 2019 WL 498865, at *24 (internal citations omitted) (S.D.N.Y. Jan. 28, 2019) (noting that a defendant cannot be held liable under the TVPRA where the defendant is "ignorant" of the alleged trafficking at issue).

### C. PLAINTIFF FAILED TO ALLEGE MARRIOTT INTERNATIONAL'S "PARTICIPATION" IN A "SEX TRAFFICKING VENTURE."

The Complaint falls woefully short of alleging any facts to support the conclusion that Marriott International (1) "participated" in (2) a "sex trafficking venture."  18 U.S.C. § 1595(a). The United States Court of Appeals for the Sixth Circuit recently held that liability under the TVPRA requires (1) an *overt act* of participation in (2) a *sex trafficking* venture (not merely *any* "venture").  *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016).  The Complaint fails to allege facts supporting either (let alone both) of these elements.

First, as the Sixth Circuit held in *Afyare*, a lawful relationship unrelated to sex trafficking (*e.g.*, a franchisor-franchisee relationship) is not a "venture" within the meaning of the statute. Rather, the party must have participated in a *sex trafficking* venture.  *Afyare*, 632 Fed. App'x at 286.  In *Afyare*, the prosecution argued that, under the TVPRA, "a 'venture' is *any* two or more people associating *for any reason*, even legal or innocuous reasons and, importantly, for reasons wholly unrelated to sex trafficking."  *Id.* at 279 (emphasis in original).  The Sixth Circuit rejected that reading of the statute, finding instead that the term "venture," as used in the TVPRA, means

10

a "sex-trafficking venture," and exists only where "[t]wo or more people [] engage in sex trafficking together." *Id.* at 286. People who associate for purposes other than trafficking, even if some subset of those people may separately commit sex trafficking crimes, cannot constitute a "venture" within the meaning of the statute. *Id.* at 286; *cf. United States v. Coppin*, 1 F. App'x 283, 288 (6th Cir. 2001) (explaining that "mere association with conspirators is not enough to establish participation in a conspiracy").

Second, "participation" in a sex trafficking venture requires an overt act; nonfeasance or a failure to prevent a crime is insufficient. *See Afyare*, 632 F. App'x at 286 ("mere negative acquiescence" is not enough); *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174, at *4; *cf. United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) ("To prove participation, there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that the defendant committed an overt act designed to aid in the success of the venture."). Construing the TVPRA otherwise "would create a vehicle to ensnare conduct that the statute never contemplated." *Afyare*, 632 F. App'x at 286.

District courts have recently confirmed that these same principles apply to civil liability under the TVPRA:

> Because guilt, or in this case liability, cannot be established by association alone, *Plaintiff must allege specific conduct that furthered the sex trafficking venture.* Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture. In other words, some participation in the sex trafficking act itself must be shown.

*Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (citing *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016) (emphasis added)); *see also Geiss v. Weinstein Co. Holdings LLC*, No. 17 CIV. 9554 (AKH), 2019 WL 1746009, at *7 (S.D.N.Y. Apr. 18, 2019) ("The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities …") (internal citation omitted, emphasis in original).

11

Here, the Complaint altogether fails to allege that Marriott International "participated" in any "sex trafficking venture."  Accepting, for purposes of this motion, the premise that sex trafficking occur at hotels, it simply does not follow that any entity affiliated with a hotel, let alone the franchisor, must be liable for resulting harm.  First, there is no allegation that Marriott International had any association with a "sex trafficking venture."  The only "venture" that Marriott International is alleged to have is a lawful relationship with its franchisee.  Yet the only "venture" relevant for purposes of the TVPRA is the "sex trafficking venture" committed by unnamed criminals—with whom the Complaint does not suggest that Marriott International had any association.  Second, and more fundamentally, there is no allegation that Marriott International committed any overt act in furtherance of that sex trafficking venture.  Alleged nonfeasance is insufficient.  Indeed, if Marriott International did not know and could not have known about the sex trafficking venture (*see supra* Section I.A.), it likewise did not and could not have "participated" in that venture.  The Complaint merely asserts that "Defendants … actively participated in this illegal endeavor by knowingly providing lodging to C.K.'s trafficker in which to harbor C.K. while he was trafficking her" and "by knowingly or negligently providing lodging to those who purchased sex from C.K."  Compl. ¶¶ 87, 89.  Yet it fails to assert any factual allegations to support that conclusion.

### D. PLAINTIFF'S COMPLAINT RELIES ON IMPERMISSIBLE "COOKIE-CUTTER" ALLEGATIONS, TRANSPLANTED FROM THE PLEADINGS OF OTHER, UNRELATED LITIGANTS.

The implausibility of this Complaint is further demonstrated by the fact that Plaintiff has merely copied and pasted "cookie-cutter" or boiler-plate allegations from the pleadings of other, unrelated TVPRA litigants, filed in different states around the same date, as part of a failed effort to consolidate claims against the hotel industry generally.  *See*, *e.g.*, *A.B. v. Hilton Worldwide Holdings, Inc., et al.*, No. 3:19-cv-1992 (D. Or. 2019); *A.B. v. Marriott International, Inc.*, No.

1:19-cv-5770 (E.D. Pa. 2019); *K.B. v. International Hotels Corporation, et al.*, No. 1:19-cv-1213

(D. N.H. 2019).  Even though each case involved different plaintiffs, different criminals, and

different hotel owners and operators, plaintiffs' counsel in each case pled the same boiler-plate

and conclusory allegations against Marriott International.

Following *Twombly* and *Iqbal*, *supra*, federal courts throughout the country have

condemned the practice of using such "form complaints" as a badge of inadequate pleading.  In

dismissing one such complaint, the court explained:

> Plaintiff's complaint is a form complaint that "makes generalized allegations
> regarding practices of the mortgage lending industry" and is "devoid of
> particularized factual allegations against Defendant." … *[O]ther courts both within
> and outside of this district have had almost identical complaints on their dockets.*
> *… Plaintiff has apparently simply copied and pasted the form complaint to create*
> *her own complaint*, and her complaint contains no allegations specific to her
> mortgage transaction.

*Shabazz v. Bank of America*, No. 1:10-cv-0813, 2010 WL 11647333, at *2 and n.1 (N.D. Ga., Oct.

26, 2010) (internal citations omitted, emphasis added);   *Cf. also Constellation Energy*

*Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011)

(internal citations omitted) (condemning a litigant's attempt to "adopt allegations from another

lawsuit as its own" and "[s]tripping away [the litigant's] transplanted allegations");  *Muhammad*

*v. Bethel-Muhammad*, No. 11-0690, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012) ("The

plaintiff's sweeping reference to his 100–page complaint represents precisely the boiler plate

safety valve … that other courts—and this one—condemn.") (internal quotations and citations

omitted).

This case represents a paradigmatic example of improper "form" pleading.  As in each

other TVPRA case above, the Complaint here alleges the vague legal conclusions that Marriott

International knew or should have known about criminal conspiracies committed against different

victims and failed to take reasonable measures to discover and prevent those crimes.  While the

use of form complaints (as here) is always a clear sign of inadequate pleading, it is particularly inappropriate in the context of TVPRA claims, which cabins civil liability upon specific proof of criminal acts of those who actively and knowingly participate in sex trafficking ventures.  *See supra* Part I.A-C.

## II.   PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE FOUR POINTS BY SHERATON JACKSONVILLE BAYMEADOWS OR THE STAFF AT THE SHERATON JACKSONVILLE

In the Complaint, the Four Points by Sheraton Jacksonville Baymeadows and Sheraton Jacksonville are the only two hotels at which C.K. was allegedly trafficked and with which Marriott International has a franchisor-franchisee relationship.  Compl. ¶¶ 12, 57.a.  The Complaint assumes that this relationship renders Marriott International responsible for the acts or omissions of each individual franchisee hotel's staff with respect to C.K.'s trafficking.  But that assumption is incorrect as a matter of Florida law.

To establish the existence of an actual agency relationship under Florida law, three elements must be pled and proven: (1) acknowledgment by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent.  *All Seasons Condominium Ass'n, Inc. v. Patrician Hotel, LLC*, 274 So.3d 438, 447 (Fla. 3d DCA 2019).  In the context of a franchisor-franchisee relationship, a franchisee will not be deemed to be the agent of the franchisor unless the franchisor has *sole* control over the "day to day operations" of the franchisee.  *See Madison v. Hollywood Subs, Inc.*, 997 So.2d 1270, 1270 (Fla. 4th DCA 2009) (emphasis added).  Merely providing contractual franchise support services is insufficient to create an agency relationship between a franchisor and franchisee.  *See Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 120 (Fla. 1995) ("In today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the

14

franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions.").

*Madison* is instructive.  There, a victim was shot and killed in an altercation in the drive-through lane of a Miami Subs franchised restaurant.  The estate sued the franchisor, even though the restaurant was operated by a separate company as franchisee.  Analyzing the franchise relationship, the court found no agency between franchisor and franchisee, noting that "the only control provided by the [franchise] agreement was to insure uniformity in the standardization of products and services offered by the restaurants.  The day to day operations were within the sole control of the franchisee."  *Madison*, 997 So.2d at 1270-71.

Complaints which allege a mere franchisor-franchisee relationship are insufficient and should be dismissed.  *See*, *e.g.*, *Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176, at *29 (C.D. Cal. 2015) (dismissing vicarious liability claim under Michigan law);  *see also N.T. v. Taco Bell Corp.,* No. 19-1028, 2019 WL 4168807 (D. Kan. Sept. 3, 2019) (dismissal under Kansas law);  *Cha v. Hooters of America*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y. 2013) (dismissal under New York law);  *Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) (dismissal under Maryland law).

These principles compel the same result here.  The Complaint alleges that Marriott International "may exercise control" or has a right of control over the hotel by virtue of a franchise agreement.  Compl. ¶¶ 52, 57.a.v.  But it does not allege facts that Marriott International had any right to control the day-to-day operations of the Four Points by Sheraton Jacksonville Baymeadows or the Sheraton Jacksonville.  To the contrary, the Complaint admits that, "the building and operations [of the hotel] are run by the franchisee or a third party management company" and that at most, "[p]er the contract or franchise agreement," Marriott International "may enforce [its]

standards through periodic inspections and *even termination of the agreement if the local hotel is found to be inadequate*."  Compl. ¶¶ 48, 52 (emphasis added).  In Florida, this is insufficient as a matter of law to establish an actual principal-agent relationship necessary to state a claim.

Marriott International cannot be held vicariously liable through apparent agency either.  Apparent agency exists when the following three elements are present: (1) a representation by the purported principal; (2) a reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation.  *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 121 (Fla. 1995).  Here, again, the Complaint merely advances the legal conclusion that "[a]n actual and/or apparent agency" existed between Marriott International and Four Points by Sheraton.  Compl. ¶ 57.a.vi.  But it does not (and cannot in good faith) allege that C.K. reasonably believed in Four Points by Sheraton's authority, that such belief was generated by Marriott International's act or neglect, or that she made any decision or changed her position in reliance on a representation by Marriott International.  *See Estate of Miller v. Thrifty Rent-A-Car Sys. Inc.*, 637 F. Supp. 2d 1029, 1041 (M.D. Fla. 2009) ("a franchisee's mere use of the franchisor's trademarks is insufficient as a matter of law to establish the reliance prong of apparent authority.").  And the factual crux of the Complaint—that C.K. was trafficked in various hotels *against her will*—is logically incompatible with the notion that C.K. somehow "relied" (let alone reasonably relied) on a representation by Marriott International.

## III.   PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL SHOULD BE DISMISSED BECAUSE IT RELIES ON IMPERMISSIBLE GROUP PLEADING.

Plaintiff's TVPRA claim also should be dismissed because it fails to attribute specific factual allegations to specific defendants.  *See Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1274 (M.D. Fla. 2009) ("Because of the grouping together of these defendants without differentiation or some sort of description of actions that could provide 'fair

16

notice' of the basis of the claims against them, the claims against the 'Peer Review Defendants' are not sufficiently pled.").   The Complaint includes many generalities, but very few specific and pertinent allegations against Marriott International.   Throughout the Complaint, there are numerous general allegations as to the "hotels" or "Defendants" collectively, *e.g.*, "Defendants had actual and/or constructive knowledge … Defendants failed to take any action … Defendants leased rooms," and so on.  *See*, *e.g.*, Compl. ¶¶ 82, 84.  Such shotgun pleadings are improper because they deprive Marriott International of notice of what it is alleged to have done.  Fed. R. Civ. P. 8(a)(2) (requiring "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (Complaints that violate Rule 8(a)(2) "are often disparagingly referred to as 'shotgun pleadings.'"). The Complaint here does not include factual allegations sufficient to plausibly suggest that *Marriott International* specifically violated the TVPRA based upon a trafficking crime that occurred at either the Four Points by Sheraton Jacksonville or Sheraton Jacksonville hotels.

## CONCLUSION

For all of the foregoing reasons, Marriott International respectfully requests that this Court dismiss Plaintiff's claim against Marriott International in its entirety and with prejudice, and to grant such other and further relief as the Court deems just and proper.

Dated: February 20, 2020                    Respectfully submitted,

DLA PIPER LLP (US)

s/ Amanda E. Reagan
Fredrick H.L. McClure
Florida Bar No. 147354
Amanda E. Reagan
Florida Bar No. 92520
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email: fredrick.mcclure@us.dlapiper.com
        amy.reagan@us.dlapiper.com
        sheila.hall@us.dlapiper.com

The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Michael P. O'Day (*pro hac vice* forthcoming)
Ellen E. Dew (*pro hac vice* forthcoming)
Michael Bakhama (*pro hac vice* forthcoming)
Email: michael.oday@us.dlapiper.com
        ellen.dew@us.dlapiper.com
        michael.bakhama@us.dlapiper.com

*Attorneys for Defendant*
*Marriott International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2020, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record as listed below.

s/ Amanda E. Reagan
Attorney

18

## SERVICE LIST

T. Michael Morgan
Morgan & Morgan, P.A.
20 North Orange Avenue, 16th Floor
Orlando, FL  32801
Phone:  407-418-2031
Fax:  407-245-3384
Email:  mmorgan@forthepeople.com
      plarue@forthepeople.com
-and-
Ashley B. Landers (admitted *pro hac vice*)
Morgan & Morgan, P.A.
333 W. Vine Street, Suite 1200
Lexington, KY  40507
Phone:  859-873-7406
Fax:  859-899-8805
Email:  alanders@forthepeople.com
*Attorneys for Plaintiff C.K.*

Michael A. Holtmann
Brandon J. Hechtman
Wicker Smith O'Hara McCoy & Ford, P.A.
2800 Ponce de Leon Boulevard
Suite 800
Coral Gables, FL  33134
Phone:  305-448-3939
Fax:  305-441-1745
Email:  mholtmann@wickersmith.com
      bhechtman@wickersmith.com
-and-
William N. Shepherd
Holland & Knight, LLP
222 Lakeview Avenue, Suite 1000
West Palm Beach, FL  33401
Phone:  561-650-8338
Fax:  561-650-8399
Email:  william.shepherd@hklaw.com
*Attorneys for Defendant*
*Inter-Continental Hotels Corporation*

19

Laura Topalli
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
111 North Orange Avenue
Suite 1200
Orlando, FL  32801
Phone:  407-203-7592
Fax:  407-648-1376
Email: laura.topalli@wilsonelser.com
-and-
Robert E. Scott, Jr. (admitted *pro hac vice*)
Marisa A. Trasatti (admitted *pro hac vice*)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
500 East Pratt Street
Suite 600
Baltimore, MD  21202
Phone:  410-962-8408
Fax:  410-962-8758
Email: robert.scott@wilsonelser.com
         marisa.trasatti@wilsonelser.com
*Attorneys for Defendant*
*Hyatt Corporation (incorrectly named as Hyatt Hotels Corporation)*

Michael E. Lockamy
Bedell, Dittmar, DeVault, Pillans & Coxe, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
Phone:  904-353-0211
Fax:  904-353-9307
Email: mel@bedellfirm.com
-and-
Nicole M. Perry (admitted *pro hac vice*)
Jones Day
717 Texas Street, Suite 3300
Houston, TX  77002
Phone:  832-239-3791
Fax:  832-239-3600
Email: nmperry@jonesday.com
-and-

Bethany K. Biesenthal (admitted *pro hac vice*)
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, IL  60601
Phone:  312-782-3939
Fax:  312-782-8585
Email:  bbiesenthal@jonesday.com
*Attorneys for Defendant*
*Hilton Worldwide Holdings, Inc.*

Fredrick H.L. McClure
J. Trumon Phillips
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email:  fredrick.mcclure@dlapiper.com
        trumon.phillips@dlapiper.com
        sheila.hall@dlapiper.com
-and-
David S. Sager (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway
Suite 120
Short Hills, NJ  07078-2704
Phone:  973-520-2550
Fax:  973-520-2551
Email:  david.sager@dlapiper.com
*Attorneys for Defendant*
*Wyndham Hotels & Resorts, Inc.*

21