**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| C.K., an individual; | |
| Plaintiff | |
| -against- | |
| WYNDHAM HOTELS AND RESORTS, INC.; | |
| HILTON WORLDWIDE HOLDINGS, INC; | CIVIL ACTION NO. 3:19-cv-01412 |
| MARRIOTT INTERNATIONAL, INC.; | |
| INTER-CONTINENTAL HOTELS, CORPORATION; | |
| AND HYATT HOTELS CORPORATION, | |
| Defendants. | |

**HYATT CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND**
**<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## Table of Contents

**Page**

I.   INTRODUCTION …………………………………………………………………1

II.   COMPLAINT ALLEGATIONS REGARDING HYATT………………………………3

III.   LEGAL STANDARDS…………………………………………………………………4

   A.  Rule 8(a) – General Rules of Pleading…………………………………………...4

   B.  Standard for Rule 12(b)(6) – Failure to State a Claim……………………….........6

IV.   ARGUMENT………………………………………………………………………….7

   A.  The Group Pleading Styled Complaint Is A Shotgun Pleading In Violation of Federal Rules 8(a) an 10(b), And Should Be Dismissed………………………………………..7

   B.  The Complaint Fails to State A Cognizable Claim Under Section 1595(a)………………9

      a.   The Complaint fails to allege sufficiently that Hyatt participated in a venture…...9

      b.   The Complaint fails to allege sufficiently that Hyatt knew or should have known the alleged venture engaged in sex trafficking…………………………………..13

      c.   The Complaint fails to allege sufficiently that Hyatt knowingly benefited from the alleged venture…………………………………………………………………...15

V.   CONCLUSION

## Table of Authorities

**Cases**                                                                                               **Page(s)**

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*
77 F.3d 364, 366 (11th Cir. 1996)……………………………………………………………..5

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009)……………………………………………………………...6, 9, 12, 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555 (2007)………………………………………………………………....6

*Betty K. Agencies,*
432 F.3d at 1337………………………………………………………………………………5

*Byrne v. Nezhat,*
261 F.3d 1075, 1133 n.113……………………………………………………………….8

*Canosa v. Ziff, No. 18 CIV. 4115 (PAE),*
2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019)…………………………………...10, 15

*Cramer v. Florida,*
117 F.3d 1258, 1263 (11th Cir. 1997)………………………………………………….5, 8

*Dressler v. United States Dep't of Educ.,*
2019 U.S. Dist. LEXIS 55451, *5, 2019 WL 1439992…………………………………..7

*Geiss v. Weinstein Co. Holdings LLC,*
383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)…………………………………………10, 15, 16

*Gilbert v. U.S. Olympic Comm.,*
No. 18-CV-00981, 2019 WL 4727636, at *15–16 (D. Colo. Sept. 27, 2019)…………...13

*Glendora v. Malone,*
917 F. Supp. 224, 227 n.3 (S.D.N.Y. 1996)…………………………………………....7

*H.H. v. G6 Hospitality, LLC,*
2:19-CV-755, 2019 WL 6682152, at *4–5 (S.D. Ohio Dec. 6, 2019)…………………...12, 16

*Jane Doe 1, et al. v. Red Roof Inns, Inc., et al.,*
1:19-cv-03840-WMR……………………………………………………………………13

*Jean- Charles v. Perlitz,*
937 F. Supp. 2d 276, 288 (D. Conn. 2013)………………………………………………13

*Lawson v. Rubin*, No. 17-cv-6404,
2018 WL 2012869, at *11–14 (E.D.N.Y. Apr. 29, 2018)……………………………..13

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*,
992 F.2d 1171, 1174 (11th Cir. 1993)……………………………………………….6

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
2:19-CV-849, 2019 WL 4929297, at *7 (S.D. Ohio Oct. 7, 2019)………………….12, 13, 16

*Noble v. Weinstein*,
335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018)…………………………………………10, 12, 13

*Perrin v. United States*,
444 U.S. 37, 42 (1979)………………………………………………………………....11

*Ratha v. Phatthana Seafood Co.*,
No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017)…………………..10, 13

*Ricchio v. McLean*,
853 F.3d 553, 556 (1st Cir. 2017)…………………………………………………...13

*Rosemond v. United States*,
572 U.S. 65, 77–78 (2014)………………………………………………………….11

*SEC v. Edwards*,
540 U.S. 389, 395 (2004)…………………………………………………………....11

*Texaco Inc. v. Dagher*,
547 U.S. 1, 5–6 (2006)……………………………………………………………....11

*United States v. Afyare*,
632 F. App'x 272, 286 (6th Cir. 2016)……………………………………………....10

*Wagner v. First Horizon Pharm. Corp.*,
464 F.3d 1273, 1280 (11th Cir. 2006)………………………………………………....5

*Weiland v. Palm Beach County Sheriff's Office*,
792 F.3d 1313, 1320 (2015)………………………………………………………....5, 7, 8

*Williams v. Obstfeld*,
314 F.3d 1270, 1275–76 (11th Cir. 2002)…………………………………………...10

*Wisconsin Central Ltd. v. United States*,
138 S. Ct. 2067, 2070 (2018)………………………………………………………..11

*Wolf v. Celebrity Cruises, Inc.*,
683 F. App'x 786, 798 (11th Cir. 2017)………………………………………………..10

**Statutes**

18 U.S.C. § 1591(a)……………………………………………………………………….4, 10

18 U.S.C. § 1595……………………………………………………2, 3, 9, 11, 12, 13, 15

**Other Authorities**

Federal Rules of Civil Procedure 4……………………………………………....1

Federal Rules of Civil Procedure 8…………………………………………....3, 4, 5, 7

Federal Rules of Civil Procedure 10…………………………………………....4, 5

Federal Rules of Civil Procedure 12(b)(5)…………………………………………1

Federal Rules of Civil Procedure 12(b)(6)…………………………………………1, 2, 6

Federal Rules of Civil Procedure 12(e)…………………………………………1

Federal Rules of Civil Procedure 21…………………………………………7

5B Wright & Miller, Federal Practice and Procedure, § 1353……………………………..1

Restatement (Second) of Torts § 491 cmt. c (1965)…………………………………………..10

Defendant Hyatt Corporation (improperly named as, "Hyatt Hotels Corporation")[1] (hereinafter referred to as "Hyatt"), moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6), and for insufficient service of process concerning Hyatt,, and in support thereof states as follows:

## INTRODUCTION

Plaintiff's Complaint is a shotgun pleading in violation of Federal Rule 8(a) and should be dismissed. Moreover, the Complaint fails to state a claim under Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA" or "Section 1595"), and therefore should be dismissed for this additional reason.

To be clear, the facts alleged in C.K.'s Complaint are horrific. They describe the worst kinds of crimes, and Hyatt is relieved that law enforcement and the courts successfully took C.K.'s trafficker off the streets and put him into prison. The goal of eliminating human trafficking is why Hyatt has long taken an aggressive stance on identifying and working to prevent human trafficking within its sphere of influence. Anti-human trafficking training, developed with the help of anti-trafficking organization Polaris, is a brand standard for colleagues at all Hyatt hotels, including franchisees.[2] Hyatt was one of the first hospitality brands to sign the End Child Prostitution and

---

[1] Hyatt Hotels Corporation is a parent holding company that has no involvement with the operations of the local Florida hotel where the incidents allegedly occurred. Accordingly, Defendant moves on behalf of Hyatt Corporation, who would be a proper defendant here. The Federal Rules of Evidence are clear that a proper summons must include, among other things, the correct names of the parties and must be directed to the correct defendant being sued. Fed. R. Civ. P. 4(a)(1)(A),(B). Process may be insufficient if the summons and complaint wrongly named party. 5B Wright & Miller, Federal Practice and Procedure, § 1353. Because the Complaint and Summons name the wrong party and because Plaintiff has sued the wrong party, service of process and process are insufficient and this case is subject to dismissal under Rule 12(b)(4) & (5). Additionally, to the extent that Plaintiff refuses to substitute Hyatt Corporation for Hyatt Hotels Corporation, additional defenses would be available, such as Plaintiff's failure to adequately plead facts sufficient to pierce Hyatt Hotels Corporation's corporate veil. Defendant reserves all rights to plead additional defenses in the future if Plaintiff fails to voluntarily dismiss Hyatt Hotels Corporation.

[2] *See* "Combatting Human Trafficking," *available at*:  https://about.hyatt.com/en/hyatt-thrive/human-rights.html (last accessed Feb. 20, 2020).

Trafficking (ECPAT) Code of Conduct in 2015, and supports the U.S. Department of Homeland Security's Blue Campaign to end human trafficking.[3]  Hyatt also regularly assists local law enforcement in sting operations to stop trafficking operations.[4]

The question in this case is not whether C.K. suffered egregious harm.  Rather, the question is whether the Complaint has adequately alleged that Hyatt is a proper Defendant who is civilly liable pursuant to Section 1595 for the trafficking of C.K. The answer is no. The Complaint does not, and cannot, plausibly allege that Hyatt is directly liable under Section 1595(a), and Hyatt should be dismissed.

The pleading itself is insufficient on facts as a matter of law. First, the Complaint is a shotgun pleading in violation of Rule 8(a). Second, the Complaint does not plausibly allege that Hyatt participated in a venture; that Hyatt knew or should have known: the alleged venture engaged in sex trafficking; and/or that Hyatt knowingly benefited from the alleged venture, as required under Section 1595(a). The Complaint therefore fails to state a claim under Section 1595(a). For these reasons, Hyatt should be dismissed from the case, or, in the alternative, the claim against Hyatt should be dismissed.[5]

---

[3] *Id.*

[4] Notably, the Complaint alleges that the Hyatt Regency in Houston, Texas was the site of multiple prostitution arrests—which Plaintiff implies somehow provided Hyatt with the requisite knowledge that C.K. was trafficked at the Regency in Jacksonville, Florida.  However, the Complaint fails to acknowledge that the article about the Hyatt Regency in Houston specifically states that the arrests at the hotel were due to the support and cooperation provided to police activities and that "[a]ll known prostitution arrests . . . are from answering requests from Houston law enforcement."  *See* Fernando Alfonso III, *Houston's Most Popular Hotels for Prostitution Busts*, HOUSTON CHRONICLE (Aug. 10, 2017) *available at* https://www.houstonchronicle.com/news/houston-texas/houston/article/Houston-s-most-popular-hotels-for-prostitution-11744958.php.

[5] For the sake of judicial economy and to avoid overloading the docket with paper, Hyatt hereby joins and incorporates the arguments within Section B of the Co-Defendant Hilton Worldwide Holdings Inc.'s ("Hilton") Motion to Dismiss under Rule 21, or, in the Alternative, under Rule 12(b)(6) [Doc. 20], that (1) the Complaint does not plausibly allege that Hyatt is directly liable under Section 1595(a); (2) the Complaint does not allege that the corporate veil should be pierced; and (3) the Complaint fails to allege sufficiently a violation of Section 1595.

## COMPLAINT ALLEGATIONS REGARDING HYATT

Hyatt adopts the generally applicable facts set forth in Hilton's Motion to Dismiss [Doc. 20]. Plaintiff alleges that Hyatt "knows and has known for more than a decade that sex trafficking repeatedly occurs under their flag throughout the country." Compl. ¶ 2. Plaintiff further alleges that C.K. was advertised on Backpage.com, tortured, and exploited at hotels in Jacksonville, Florida, including Hyatt Regency® ("the Regency"). *Id.* ¶ 6. Between late 2008 and 2012, C.K. alleges horrific abuse at the hands of a sex trafficker in Jacksonville, Florida. *Id.* ¶¶ 4, 61. With regard to Hyatt, C.K. alleges that, on an unspecified number of occasions and dates, she was forced by her trafficker to meet buyers for commercial sex (or "out calls") at various Defendants' hotels, including the Regency. *Id.* ¶ 75. Importantly, C.K. does not allege any affirmative wrongful act by Hyatt, or event that she interacted with the Regency employees on any of these occasions. Moreover, Plaintiff does not provide specific years—let along specific dates—identifying when she was allegedly trafficked at the Regency. *Id.* ¶ 75 ("Between 2008 and 2012, the same scene repeatedly played out…").

Rather, C.K. asserts blanket and conclusory allegations against all Defendants[6], including Hyatt, without the requisite factual basis to support same, for example:

- C.K.'s trafficker paid for rooms in small increments using cash, and reserved each room for an extended period of time. C.K. repeatedly visited locations without luggage, and she rarely left her rooms. *Id.* ¶¶ 71–73, 86, 88.

- C.K.'s trafficker requested additional towels, but refused all other housekeeping services. There was regular traffic in and out of C.K.'s rooms. *Id.* ¶¶ 71, 86.

- C.K. avoided eye contact and exhibited diminished personal hygiene, sleep deprivation, malnourishment, and prominent bruising. *Id.* ¶ 88.

- Video surveillance at hotels and oral or written complaints regarding suspicious activity should have alerted the defendants to the sex trafficking. *Id.* ¶ 82.

---

[6] *See generally*, Compl. §§ A-B, pp. 11-17.

Specific to Hyatt, the Complaint summarily alleges that Hyatt is liable :

- By and through its relationship with the staff at the Hyatt Regency® where C.K. was trafficked and the perpetrator who trafficked C.K. at the Hyatt Regency® while registered as a guest there, Defendant Hyatt knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking. *Id.* ¶ 14(c).

In early 2012, a buyer gave C.K. money for airfare and she fled. *Id.* ¶ 80. Her trafficker was ultimately prosecuted under 18 U.S.C. § 1591(a) (sex trafficking by force, fraud, or coercion) and sentenced to 24 years in federal prison. *Id.* ¶ 81. In December 2019, C.K. filed this lawsuit against various hotel entities, including Hyatt, pursuant to the TVPRA.

## LEGAL STANDARDS

### A. Rule 8(a) – General Rules of Pleading

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."

Rule 10(b) further provides:

A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence — and each defense other than a denial — must be stated in a separate count or defense.

*See Weiland v. Palm Beach County Sheriff's Office.*, 792 F.3d 1313, 1320 (2015).

When a complaint does not meet this standard of specific allegations directed to specific defendants, it has been termed a "shotgun pleading." The Eleventh Circuit Court of Appeals has been particularly clear that shotgun pleadings do not meet the federal pleading standards holding, for example:

"While plaintiffs have the responsibility of drafting complaints, defendants are not without a duty of their own in this area. We have said that a defendant faced with a shotgun pleading should

move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Anderson*, 77 F.3d at 366.  The Eleventh Circuit is also clear that courts are empowered <u>"to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead."</u> *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) ("Given the district court's proper conclusions that the complaint was a shotgun pleading and that plaintiffs' [sic] failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading sua sponte."); *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[W]e note that the district court, acting on its own initiative, should have stricken [the shotgun pleading] and instructed counsel to replead their cases. . . ."). Where a plaintiff fails to make meaningful modifications to her complaint, a district court may dismiss the case under the authority of either Rule 41(b) or the court's inherent power to manage its docket. *See Betty K. Agencies*, 432 F.3d at 1337; *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321, 2015 U.S. App. LEXIS 11750, *14-16, 92 Fed. R. Serv. 3d (Callaghan) 378, 25 Fla. L. Weekly Fed. C 1366.

A dismissal under Rules 8(a)(2) and 10(b) is appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). *Weiland*, 792 F.3d at 1325, 2015 U.S. App. LEXIS 11750, *28.  Here, the Complaint clearly meets the criteria of a shotgun pleading.  Plaintiff has failed to plead any specifics at all in the Complaint—no dates as to when the Plaintiff allegedly stayed in the hotel, no room numbers, no name[s] under which the rooms were reserved, no indication as to whether any identification was provided, etc.  Plaintiff has also failed to plead any specific facts that would have provided Hyatt with the requisite knowledge that C.K. was being trafficked specifically at any given time.  This group pleading approach, where all allegations are essentially the same against all Defendants, renders it

impossible for Defendant to investigate the claim therein.  Without those basic facts, of what each defendant's acts or omissions were, the Complaint is nothing more than a list of conclusory allegations and should be dismissed.

### B.  Standard for Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint meet the pleading standards of Federal Rule of Civil Procedure 8 so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Dismissal is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The complaint must "state a claim to relief that is plausible on its face," with allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. Thus, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). Courts need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, courts must conduct a context-specific inquiry and rely on "judicial experience and common sense" to determine if a plaintiff's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.

Federal Rule of Civil Procedure 21 permits a court, "[o]n motion or on its own," and "on just terms," to "add or drop a party." "[T]he court may rely on Rule 21 to delete parties that have no connection to the claims asserted." *Glendora v. Malone*, 917 F. Supp. 224, 227 n.3 (S.D.N.Y. 1996).

**ARGUMENT**

I.      **The Group Pleading Styled Complaint Is A Shotgun Pleading In Violation Of Federal Rules 8(a) And 10(b), And Should Be Dismissed.**

Plaintiff's Complaint is a shotgun pleading in violation of Federal Rule 8(a) and should be dismissed. Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Eleventh Circuit is particularly wary of complaints that list various allegations against multiple defendants without specifying which allegations are directed at which defendant, referred to as "shotgun pleadings." 2019 U.S. Dist. LEXIS 55451, 2019 WL 1439992; *see generally, Weiland v. Palm Beach Cnty. Sheriff's Ofc.*, 792 F.3d 1313 (11th Cir. 2015) (defining four types of shotgun pleadings).[7] As this Court has noted, "[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Dressler v. United States Dep't of Educ.*, 2019 U.S. Dist. LEXIS 55451, *5, 2019 WL 1439992. "A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Id.* (citing *Weiland*, 792 F.3d at 1320). "In a case where a defendant files a shotgun pleadings, a court [ ]['should strike the [pleading] and instruct counsel to replead the case – if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b).'" *Id.* at *5-*6; *see also, Byrne v. Nezhat*, 261

---

[7] The four "rough" types or categories of shotgun pleadings identified by the Eleventh Circuit in *Weiland* are:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1322-23.

F.3d 1075, 1133 n.113 (quoting *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)).

Plaintiff's complaint is an archetype of the form, making conclusory allegations against multiple defendants over a pattern of years, without any identifying details to allow any single defendant to be on notice for the particular factual allegations against it.   *See, e.g.,* Compl. ¶ 78 ("Between 2008 and 2012, the same scene repeatedly played out at the Crowne Plaza . . . , the Four Points by Sheraton  . . . and the Hyatt Regency.")   Indeed, Plaintiff's Complaint adopts all preceding paragraphs causing each successive paragraph and allegation to carry all that came before to be a combination of the entire Complaint. *See* Compl. ¶ 97.  Plaintiff's sole count failed to identify specific facts and the particular nature of the violations that each defendant, particularly Hyatt, allegedly committed, generally lumping defendants together under Count I. *Id.* at ¶¶ 22-47, 48-55, 82-86, 97-101.

Despite the considerable length of the Complaint—54 pages and 101 paragraphs—the allegations against Hyatt are summarized in fourteen (14) conclusory paragraphs, which are similar if not identical to those against all of the brand named Defendants. *See* ¶¶ 78, 84-96. The Complaint alleges in conclusory fashion that Hyatt "knowingly benefited" by "participating in" a venture it "knew, or should have known" was a sex-trafficking venture. *See, e.g., id.* ¶¶ 84-100. But those are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Nothing in the Complaint explains how Hyatt Corporation could have had the requisite knowledge that a particular individual—C.K.—was being trafficked at any particular hotel  at any particular time, or how Hyatt took any action related to C.K.'s trafficking, caused C.K.'s trafficking, or knowingly benefited from participation in a sex trafficking venture.

Plaintiff's Complaint is undoubtedly a shotgun pleading in violation of Rule 8(a) and

therefore, the Complaint should be dismissed with leave to amend.

**II.      The Complaint Fails To State A Cognizable Claim Under Section 1595(a).**

The Complaint fails to allege that Hyatt is directly liable under Section 1595(a). To state a claim under Section 1595(a), a plaintiff must allege sufficient facts to show that a defendant: (1) "knowingly benefit[ed], financially or by receiving anything of value from," (2) "participation in a venture," (3) "which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).  In sum, the facts against Hyatt in Plaintiff's Complaint merely alleges that she was trafficked at unspecified dates at the Regency, that she passed by the staff at the front desk "visibly deteriorating," and that Hyatt Corporation received revenues from the reservation of rooms in which she was trafficked.  These facts are woefully inadequate to establish any of the elements required by Section 1595(a).  Accordingly, the Complaint does not plausibly allege that Hyatt is liable under Section 1595(a).

**a.  The Complaint fails to allege sufficiently that Hyatt participated in a venture.**

The Complaint fails to allege any legally sufficient facts to show that Hyatt "participat[ed] in a venture" with C.K.'s trafficker. *See* 18 U.S.C. § 1595(a). The concept of participation in a venture is well settled—both in surrounding statutory text and at common law. Congress defined "venture" as "any group of two or more individuals associated in fact." 18 U.S.C. § 1591(e)(6). Congress defined "participation in a venture" as "knowingly assisting, supporting, or facilitating [sex trafficking]." *Id.* § 1591(e)(4).

Given Section 1595(a)'s focus on financial benefits, it is unsurprising that Congress's concept of a venture tracks the common law understanding of a joint venture. Such a venture is "[a] business undertaking by two or more persons engaged in a single defined project." *Joint Venture*, Black's Law Dictionary (11th ed. 2019). And the "necessary" elements are: "(1) an

express or implied agreement; (2) a common purpose that the group intends to carry out; (3) shared profits and losses; and (4) each member's equal voice in controlling the project." *Id.*; *see also* Restatement (Second) of Torts § 491 cmt. c (1965) (same); *Williams v. Obstfeld*, 314 F.3d 1270, 1275–76 (11th Cir. 2002) (outlining the same requirements under Florida law); *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017) (per curiam) (outlining the same requirements in federal maritime context).

In line with this understanding, numerous courts have held that "participation in a venture" must involve more than a defendant's "mere negative acquiescence" in sex trafficking. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (unpub.). Participation connotes action, not inaction. "[M]ere association" in some endeavor "criminal or otherwise" is not enough. *Id.* at 284. Instead, the defendant must have "actually participated in a sex-trafficking venture" by "commit[ting] some 'overt act' that furthers the sex trafficking aspect of the venture." *Id.* at 286; *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (same).

It is well-established that under federal law, participation in a venture involves knowingly performing an overt act in furtherance of an agreement to pursue a common purpose and share in profits and losses. For purposes of aiding and abetting liability, for example, one is an "active participant" when he "has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope." *See Rosemond v. United States*, 572 U.S. 65, 77–78 (2014). For purposes of the Sherman Act, two entities that pool their capital and share the losses and profits are "participat[ing]" in a "joint venture." *See Texaco Inc. v. Dagher*, 547 U.S. 1, 5–6 (2006). And

for purposes of the securities laws, the touchstone of an investment contract is "the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *See SEC v. Edwards*, 540 U.S. 389, 395 (2004).

Section 1595(a) requires a defendant to have participated in a venture, and therefore this Court should give those terms their ordinary meaning. *See, e.g., Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) ("As usual, our job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))). The ordinary meaning—which flows from the elements contained in the dictionary definitions and law highlighted above—is that the defendant must have entered into an agreement (express or implied) with a trafficker and performed an overt act to further some common purpose and share both profits and losses.

Rather, the Complaint does not allege facts sufficient to meet this definition. Every time the Complaint mentions the word "venture" with respect to Hyatt, it is accompanied only by the bald assertion that Hyatt participated in a sex-trafficking venture. *See* Compl. ¶¶ 5, 8, 14(c), 14(f), 84, 86, 88, 99. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Simply, the Complaint never alleges that Hyatt entered into an agreement with C.K.'s trafficker to carry out a common goal and share in both profits and losses of the enterprise.

Hyatt anticipates that Plaintiff will argue that Hyatt engaged in two overt acts in furtherance of the supposed venture: (1) renting a hotel room to a trafficker, who then used the room to commit his crime, and (2) accepting the revenue from that room, with knowledge of the trafficker's criminal purpose. Yet the Complaint has not alleged any such facts. Indeed, the Complaint utterly

fails to allege **any** facts that demonstrate that Hyatt was accepting revenues from known traffickers with the knowledge that the money was derived from trafficking.

Because the Complaint has not alleged any facts showing that Hyatt entered into any agreement with C.K.'s trafficker, or that Hyatt engaged in any overt acts in furtherance of C.K.'s trafficker's criminal scheme, the Complaint fails as a matter of law to plausibly allege that Hyatt participated in a venture with C.K.'s trafficker. *See Noble*, 335 F. Supp. 3d at 524 (dismissing TVPRA claim against Harvey Weinstein's brother where there were no plausible allegations that he knew of, or participated in, Weinstein's actions, even though he benefited).[8]

### b. The Complaint fails to allege sufficiently that Hyatt knew or should have known the alleged venture engaged in sex trafficking.

Even if the Complaint had plausibly alleged that Hyatt entered into a venture with C.K.'s trafficker, the Complaint has not alleged adequately that Hyatt "knew or should have known" that the venture's purpose was sex trafficking. *See* 18 U.S.C. § 1595(a). Federal courts have generally associated the "knew or should have known" standard with actual knowledge or reckless disregard. *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.) (referencing reckless disregard); *Lawson v. Rubin*, No. 17-cv-6404, 2018 WL 2012869, at *11–14 (E.D.N.Y. Apr. 29,

---

[8] Two recent decisions from Judge Marbley in the Southern District of Ohio suggest that there is some tension between the knowledge that a defendant must have under the participation-in-a-venture element and the requirement that the defendant "knew or should have known" that the venture engaged in trafficking. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 2:19-CV-849, 2019 WL 4929297, at *7 (S.D. Ohio Oct. 7, 2019); *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152, at *4–5 (S.D. Ohio Dec. 6, 2019). But, there is no tension. For a defendant to have participated in a venture, it must have (1) entered into an agreement with a common purpose and intent to share in benefits and losses, and (2) performed an overt act in furtherance of that agreement. If the defendant enters into an agreement with the common purpose of trafficking and sharing in the benefits and losses (and performs an overt act to that end), then the defendant will automatically fall within the "knew or should have known" requirement. But if—as here—there are no well-pleaded, plausible allegations that the defendant did so, then the plaintiff must show that the defendant knowingly participated in some other venture that the defendant knew or should have known engaged in sex trafficking. In that scenario, to be liable under Section 1595(a), the defendant must have knowingly entered into an agreement with a common purpose and the intent to share in benefits and losses, and must have performed an overt act in furtherance of that purpose that advances what the defendant knew or should have known is sex trafficking (and must have knowingly benefited). Here, the Complaint has clearly failed to set forth well-pled, plausible allegations that Hyatt knowingly participated in a venture that it "knew or should have known" engaged in sex trafficking.

2018); *Noble*, 335 F. Supp. 3d at 524; *Jean- Charles v. Perlitz*, 937 F. Supp. 2d 276, 288 (D. Conn. 2013); *cf. Gilbert v. U.S. Olympic Comm.*, No. 18-CV-00981, 2019 WL 4727636, at *15–16 (D. Colo. Sept. 27, 2019). One judge in the Southern District of Ohio has also interpreted "should have known" to constitute a "constructive knowledge" requirement. *See M.A.*, 2019 WL 4929297, at *6–7; H.H., 2019 WL 6682152, at *3.

But the Complaint has failed to allege plausibly that Hyatt knew or recklessly disregarded—or even constructively knew—that it was participating in a sex-trafficking venture. First, while the Complaint spends considerable time discussing trafficking issues in the hotel industry at large. (*see* Compl. ¶¶ 22–54, "general reports about human trafficking" are insufficient to establish that Hyatt knew or should have known that its alleged venture was engaged in a *specific* act of sex trafficking of this *specific* plaintiff. *See Ratha*, 2017 WL 8293174, at *5. [9]

Second, pointing to various news reports, the Complaint alleges that Hyatt has known for years that commercial sex occurs at Hyatt hotels. Compl. ¶¶ 59(a)(viii)(a)-(c). As an initial matter, the incidents cited by Plaintiff allegedly occurred in different states over a course of eight years. As discussed above, critically, the prostitution arrests at the Hyatt Regency in Houston cited by Plaintiff were a result of the hotel's partnership and cooperation with local law enforcement, who conducted sting operations at the hotel. *See* disc. *supra* at p. 2 n.5. Moreover, the investigation of the April 2011 incident in Greenwich, Connecticut determined that Hyatt management was unaware of the prostitution. *Id.* ¶¶ 59(a)(viii)(b) & (c). Plaintiff fails to explain how Hyatt Corporation could have been aware that C.K. was being trafficked at the Hyatt Regency in

---

[9] On February 7, 2020, Judge William M. Ray, II held a status conference in three related Georgia cases and primarily addressed several motions to dismiss. Judge Ray preliminarily noted that he was "not impressed with the complaint," and that the complaint—which is remarkably similar to the Complaint here—"is long on details but short on the details that [he] need[s] in order to decide whether your complaint can go forward." He ultimately determined that "after today[,] … there's going to have to be a recasted complaint, and in that complaint it's going to have to remove all of the puffing that existed in the original complaint about sex trafficking and what it is and why it is bad." *Jane Doe 1, et al. v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR.

Jacksonville, Florida because law enforcement determined that individuals engaged in prostitution at Hyatt properties in Connecticut and Arizona and the Hyatt Regency in Houston partners with local law enforcement to conduct sting operations.

Finally, the Complaint alleges that the trafficker's actions—paying for rooms in cash and for extended periods of time, requesting many towels, and refusing other housekeeping services—together with the foot traffic in and out of C.K.'s room were such that Hyatt knew or should have known that it was engaged in a sex-trafficking venture along with the trafficker. Compl. ¶¶ 71, 73, 86. The Complaint also notes that C.K. often lacked luggage, avoided eye contact, and looked "deteriorate[d]." *Id.* ¶¶ 74; 88.

All of these allegations are equally consistent with occasional and innocent behavior of other hotel guests and, without more, do not establish the requisite scienter. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citations omitted). In determining whether the Complaint's claim for relief is plausible, this Court must "draw on its judicial experience and common sense." *Id.* at 679. Based on these allegations, the Complaint has not established that Hyatt actually knew, recklessly disregarded, or constructively knew that it was participating in a sex-trafficking venture with C.K.'s trafficker.

Accordingly, the Complaint fails to plead sufficiently that Hyatt knew or should have known that it was participating in a venture (with a common purpose and the goal of turning a profit, no less) that was engaged in the illegal sex trafficking of C.K.

### c.  The Complaint fails to allege sufficiently that Hyatt knowingly benefited from the alleged venture.

The Complaint also fails to allege adequately that Hyatt "knowingly benefit[ed]" from the alleged sex-trafficking venture. *See* 18 U.S.C. § 1595(a). A knowing benefit is more than a mere

benefit. For that reason, there must be "a causal relationship" between a defendant's "affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or . . . constructive knowledge of that causal relationship." *Geiss*, 383 F. Supp. 3d at 169; *see also Canosa*, 2019 WL 498865, at *24 (same). And where a defendant benefits "in spite of," rather than "because of," a trafficker's actions, that is not a sufficient causal relationship. *Geiss*, 383 F. Supp. 3d at 169–70.

The Complaint alleges that Hyatt (along with the other Defendants) benefits "by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade." Compl. ¶ 100. The Complaint also alleges that Hyatt benefited by receiving payments for the rooms in which C.K. was trafficked. *Id.* But these allegations are insufficient to establish a knowing benefit. Hyatt receives no benefit from sex trafficking that it would not receive from any other use of a hotel room.

Indeed, Hyatt works to prevent trafficking at its hotels, and devotes considerable resources to prevent sex trafficking within its sphere of influence. Moreover, trafficking poses risks to hotel guests and a signification threat to Hyatt's reputation. There is no plausible argument—nor any alleged facts—that Hyatt benefits from sex trafficking. And if Hyatt benefited at all during C.K.'s trafficking, those benefits necessarily accrued "in spite of," rather than "because of," the trafficker's actions. *Geiss*, 383 F. Supp. 3d at 169–70.[10]

Accordingly, Hyatt respectfully requests that the Court either dismiss Hyatt as an improper

---

[10] The decisions in *M.A.* and *H.H.* held that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard.*" H.H.*, 2019 WL 6682152, at *2 (quoting *M.A.*, 2019 WL 4929297, at *3). But that holding effectively erases the words "knowingly" and "from" from the statute. The phrase "knowingly benefits . . . from" requires the defendant to have known all of the circumstances underlying satisfaction of the other two Section 1595(a) elements and received (and retained) a benefit that the defendant knows to be tied to those circumstances. *See Knowingly*, Black's Law Dictionary (11th ed. 2019). Otherwise, mere receipt of a benefit without more would threaten to transform Section 1595(a) into a strict liability statute.

Defendant and/or dismiss Count One against Hyatt, with prejudice.

## CONCLUSION

Plaintiff's Complaint is a shotgun pleading saturated with conclusory allegations that fail to meet the standards of Rules 8 and 12(b)(6). Moreover, Plaintiff's Summons names the incorrect Hyatt entity, thereby rendering process insufficient. Accordingly, for the foregoing reasons, Hyatt's motion should be granted and Plaintiff's Complaint should be dismissed with prejudice.

By:      */s/ Marisa A. Trasatti*
Marisa A. Trasatti (Bar #25663)
Robert E. Scott, Jr. (Bar #05010)
Zachary A. Miller (Bar #20088)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
500 E. Pratt Street, Suite 600
Baltimore, MD 21202-3173
Tel. 410-539-1800
Fax. 410-962-8758
Marisa.Trasatti@wilsonelser.com
Robert.Scott@wilsonelser.com
Zachary.Miller@wilsonelser.com

Attorneys for Hyatt Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all attorneys of record in the above-captioned case.

*/s/ Marisa A. Trasatti*
Marisa A. Trasatti (Bar #25663)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
500 E. Pratt Street, Suite 600
Baltimore, MD 21202-3173
Tel. 410-539-1800

16

Fax. 410-962-8758
Marisa.Trasatti@wilsonelser.com
Robert.Scott@wilsonelser.com
Zachary.Miller@wilsonelser.com

Attorneys for Hyatt Corporation