**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| C.K., an individual; | |
| Plaintiff | |
| -against- | |
| WYNDHAM HOTELS AND RESORTS, INC.; | |
| HILTON WORLDWIDE HOLDINGS, INC; | CIVIL ACTION NO:3:19-CV-01412-MMH |
| MARRIOTT INTERNATIONAL, INC.; | |
| INTER-CONTINENTAL HOTELS, CORPORATION; | |
| AND HYATT HOTELS CORPORATION, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW AND RESPONSE IN OPPOSITION TO DEFENDANT INTER-CONTINENTAL HOTEL CORPORATION'S MOTION TO DISMISS**

Plaintiff, C.K. ("Plaintiff"), herein responds and opposes Defendant Inter-Continental Hotel Corporation's ("Inter-Continental" or "IHC") Motion to Dismiss ("Motion"), Doc. No. 57, and asserts the following:

I.    **INTRODUCTION**

The United States Supreme Court has discussed the major role of the hospitality industry in human trafficking: "The private pain and public costs imposed by human trafficking are beyond contention, and motels provide an obvious haven for those who trade human misery."[1] Inter-Continental is the master puppeteer, common denominator, and sole true public face of the IHC hospitality brand, and has turned a blind eye to the victimization and sex trafficking endured by C.K. Plaintiff has

---

[1] *City of Los Angeles, Calif v. Patel*, 135 S. Ct. 257, 2461 (2015). (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.).

adequately pled aspects involving Wyndham's position, as well as the elements of 18 U.S.C. §1595(a), to assert that Inter-Continental is directly liable – or, at a minimum, indirectly liable – under said civil remedy statute, and is an appropriate party to the action.[2] Accordingly, Inter-Continental's Motion should be denied in full.

## II.   <u>FACTUAL BACKGROUND</u>

Not only does Plaintiff plead plausible theories of liability against IHC in her Complaint entitling her to relief, but Plaintiff pleads sufficient facts supporting that IHC clearly had actual and/or constructive notice of the sex trafficking activities occurring on its property, yet turned a blind eye, and instead participated in the venture and generated profits from the victimization and horror endured by C.K.

Plaintiff provided numerous facts in her Complaint supporting that IHC ignored the red flags with regard to the victimization of C.K. on their property. *See* Plaintiff Complaint ("Complaint"), Doc. No. 1, at ¶¶ 61-83. Indeed, Plaintiff alleges that she was forced to meet buyers for commercial sex at the Crowne Plaza, and that C.K. endured serious and visible physical abuse at the hands of her trafficker while being forced to serve buyers at the property. *Id.* at ¶¶ 75-77. Plaintiff alleged that she walked through the lobby at the Crowne Plaza *repeatedly* battered, limping, and visibly bruised across her face, arms, and legs. *Id.* at ¶¶ 77-78. Plaintiff alleges that she had no luggage or identification, and her sex trafficker lingered in her shadow. *Id*. Plaintiff alleges that the front desk staff at the Crowne Plaza saw a visibly beaten, bruised, and neglected woman on her way to see a guest at their hotel, where she would stay for hours at a time while the man who escorted her waited eerily in the hotel lobby. *Id.* Plaintiff alleged that this same scene played out time and time again at the Crowne Plaza. *Id.* at ¶ 78. Plaintiff alleges that despite the clear red flags, no action was taken by the front desk staff at the Crowne Plaza.

---

[2] Defendant also asserts that Inter-Continental Corporation is incorrectly named in this case, and that the franchisor is a different entity. *See* Motion at 1 (n. 1). In light of the complexity involving the corporate structure, it is Plaintiff's position that examination of such an issue should be addressed in discovery on the merits, rather than during the pleadings stage.

*Id.* The fact that that C.K. was beaten, battered, and abused was clearly noticeable to onlookers, including the front desk staff at the Crowne Plaza, and even customers would often refuse to have sex with her in light of the significant and visible injuries C.K. sustained at the hands of her trafficker. *Id.* at ¶ 77-79.

In addition, the facts as alleged by Plaintiff in her Complaint support the presence of other red flags, such as that C.K.'s trafficker paid for his room using cash, reserved the room for an extended stay, refused all housekeeping services but frequently requested towels, constantly entertained traffic from 5-12 male visitors a day, and checked in with a young woman who seldom left the room – behaviors clearly indicative that he was using IHC for his illegal sex trafficking venture. *Id.* at ¶ 73, 86. Although C.K repeatedly visited the hotel – often visiting the same guests – without any luggage, avoiding all eye contact, and exhibiting signs of abuse (with visible and prominent bruising), diminished personal hygiene, sleep deprivation, and malnourishment – IHC took no action, instead facilitating the trafficking of C.K to their financial benefit. *Id.* at ¶ 75-79, 84-96. Plaintiff even alleged facts providing what IHC failed to do, and what IHC could have done with regard to addressing the rampant culture of sex trafficking at its properties, including the property at issue involving C.K., as well as its notice and facilitation of sex trafficking at other properties. *Id.* at ¶ 42-43, 60.

### III.    STANDARD OF REVIEW

"To survive [a motion to dismiss], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 570 (2007).  This plausibility standard "'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) citing *Bell Atl. Corp. v. Twombley,* 550 U.S. at

3

566.  As a result, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must be denied "unless it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Canadyne-Georgia Corp. v. NationsBank, N.A. (South)*, 183 F.3d 1269, 1272 (11th Cir. 1999) citing *South Florida Water Management Dist. V. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996).  In interpreting the Federal Rules, this circuit has repeatedly stated that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Canadyne-Georgia Corp. v. NationsBank, N.A. (South)*, 183 F.3d at 1275-76 (internal cites omitted); *see also Levine v. World Financial Network Nat. Bank*, 437 F.3d at 1120.

## IV.   ARGUMENT AND MEMORANDUM OF LAW

### A.   Plaintiff's Complaint Sufficiently Pleads a Claim for Civil Remedy Under 18 U.S.C. 1595(a) Against IHC.

The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. §1591, et seq., criminalizes the sex trafficking of children and adults by force, fraud, or coercion. Plaintiff is a victim of conduct in violation of §1591(a). Separately, §1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators of sex trafficking or the beneficiaries of sex trafficking. *See* 18 U.S.C. §1595(a). Count One of Plaintiff's complaint explicitly and unequivocally states a beneficiary theory of liability against IHC under §1595. *See* Complaint at ¶¶ 97-101.

Congress passed the Victims of Trafficking and Violence Protection Act ("TVPA") in 2000. Pub. L. No. 106–386, 114 Stat. 1466 (2000). The TVPA has been reauthorized several times in years since, including 2003, 2005, 2008, 2011, 2013, and 2017. The text of TVPA, and its associated legislative history, reveals Congress' intent to provide a means of recovery for victims of sex trafficking by allowing them to pursue civil actions for human trafficking violations. By example, the 2003 version of 18 U.S.C. §1595(a) was a narrow remedial statute that established a statutory civil cause of action

against perpetrators who were, or could have been, held criminally liable for their misconduct. *See* Pub. L. No. 108–193, 117 Stat. 2878 (2003). However, in 2008, 18 U.S.C. §1595(a) was intentionally amended with substantially different language, creating a category of defendants that could be held liable civilly *even in the absence of criminal culpability*.

By amending 18 U.S.C. §1595 in 2008 as part of the TVPRA, Congress required "whoever," *i.e.*, all businesses, including those in the hospitality industry, to comply with the new law or face new civil liability. *See* Amended Pub. L. No. 110–457, title II, §221(2), Dec. 23, 2008 (TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'"). This amendment to the country's systemic human trafficking legislation necessitated a paradigm shift in the hospitality industry.[3] Compliance with the TVPRA requires businesses, including businesses in the hospitality industry, to conduct a proactive analysis to determine whether the business financially benefits from participation in a sex trafficking venture. Thus, businesses in the hospitality industry must take affirmative steps to determine whether they financially benefit from sex trafficking and, if so, prevent sex trafficking on their properties and, thus, the attendant financial benefit derived from the occurrence of sex trafficking. To make this determination – to find out what it is they should know – brand managers and branded properties within the hospitality industry must exert some meaningful effort to apprise themselves of the activities – especially flagrant criminal activities – at their hotel properties.

---

[3] For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, introduced an even broader paradigm shift by requiring change nationally across all business sectors. Employers could no longer discriminate on the basis of race, religion, sex, or national origin. *Id.* Employers were of course free to maintain the status quo and continue to discriminate against their employees, but because of the new law they were liable for damages on a going forward basis for continuing to discriminate after discrimination was prohibited by law. Similarly, businesses within the hospitality industry are free to maintain the status quo pre-2008 and do nothing to determine whether they benefit financially from sex trafficking occurring on their hotel properties but choosing to maintain this status quo post-2008 following the amendment to §1595 of the TVPRA exposes businesses in the hospitality industry to liability for their purposeful inaction and noncompliance with the law.

Plaintiff's assertions of the crucial significance of this change in the statutory language is supported by well-established principles of statutory interpretation. As a general rule, when interpreting a statute, one must "consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999); *see Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute."). There is "a canon of construction that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). This canon of statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).

### i.   Plaintiff Has Pleaded Facts Sufficient to Show IHC Participated in a Venture with C.K.'s Trafficker.

Plaintiff has sufficiently alleged that IHC participated in a venture with C.K.'s trafficker. IHC relies extensively on *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), as well as a host of other non-controlling case law, to define "participation in a venture" under §1591.[4] Such reliance is principally misplaced as "'participation' under § 1595 [for non-perpetrator claims] does **not** require actual knowledge of participation in the sex trafficking itself." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 2:19-CV-849, 2019 WL 4929297 at *15 (S.D. Ohio Oct. 7, 2019). Rather, "liability under §1595 [for

---

[4] *See* Motion at 5-7. In particular, IHC cites to *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. Apr. 18, 2019) (in which the plaintiff only asserted § 1595 perpetrator trafficking claims against defendants who directly violated § 1591(a)(1) and § 1595 perpetrator financial beneficiary claims against defendants who directly violated § 1591(a)(2)); *Canosa v. Ziff*, No.18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) (in which the plaintiff only asserted § 1595 perpetrator trafficking claims against defendants who directly violated § 1591(a)(1) and § 1595 perpetrator financial beneficiary claims against defendants who directly violated § 1591(a)(2)); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018)(in which the plaintiff does not allege any § 1595 claims and solely § 1591 claims); *Ratha v. Phattana Seafood Co., Ltd*, CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Calif. Dec. 21, 2017) (based on a district court ruling that the Tenth Circuit recently reversed and remanded in relevant part in *Bistline v. Parker*, 918 F.3d 849 at 873 (10th Cir. 2019)).

non-perpetrator claims] can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in sex trafficking." *Id* at *15; *see also Jean Charles v. Perlitz*, 937 F.Supp.2d 276, 289 (D. Conn. 2013) (finding defendants participated in a venture where they maintained affiliations with a school involving sex trafficking of minors).

Further, IHC relies on the definition of "participation in a venture" supplied in § 1591(e). *See* Motion at 5. However, the definitions in §1591(e) clearly purport to only apply to "this section," *i.e.* §1591, rather than §1595. "There is such variation in the connection in which the words are used as to reasonably warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932). Indeed, applying the definition of "participation in a venture" in §1591(e) to the requirements under §1595 would void the "known or should have known" language of §1595. *M.A. v. Wyndham,* 2019 WL 4929297 at *14.  In a clear effort to confuse matters, IHC also tries to use an inapt legal term of art to narrowly define a word with a clear common meaning.[5]

Plaintiff avers that IHC "participat[ed] in, and facilitated, the harboring and providing of C.K. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and/or commissions." *See* Complaint at ¶ 99. Further, Plaintiff alleges that IHC, as hotel operator, controls the training and policies for its branded properties, including the property where C.K. was trafficked, and represents that it considers guest safety and security important and requires the hotels in its portfolios to comply with IHC brand standards in this regard. *Id.* at ¶ 13, 60. Finally, Plaintiff alleges that, by and through IHC's relationship with the staff at the property where C.K was trafficked, IHC knowingly

---

[5] IHC attempts to use the common law definition of a "joint venture" to otherwise define the term "venture" in §1595(a). [*See* Motion at 6] While Black's Law Dictionary defines a Joint Venture as "a business undertaking by two or more persons engaged in a single defined project", and requiring "(1) and express or implied agreement; (2) a common purpose that the group intends to carry out; (3) shared profits and losses; and (4) each members equal voice in controlling the project," it also defines a simple "venture" as "an undertaking that involves risk." *See* Black's Law Dictionary (11th ed. 2019). Of course, the Black's Law Dictionary definition is not controlling for the statute.

benefited from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking, including money generated. *Id.* at ¶ 13. Here, Plaintiff's trafficker had a sex trafficking venture, and Plaintiff alleges facts supporting that IHC repeatedly rented rooms to the trafficker, thus participating in and facilitating her trafficking. *See M.A. v. Wyndham,* 2:19-CV-849, 2019 WL 4929297 at *16 ("plaintiff must allege at least a showing of a continuous business relationship between the trafficker and hotels such that it would appear that the trafficker and hotels have established a pattern of conduct or could be said to have a tacit agreement."). Therefore, it is clear that C.K.'s Complaint has alleged sufficient facts showing that IHC participated in a venture with C.K.'s trafficker.

### ii.   Plaintiff Has Pleaded Sufficient Facts to Show IHC Knowingly Benefited Financially in Violation of §1595.

Plaintiff has plausibly alleged that IHC knowingly benefitted from the venture that trafficked her, and indeed, Plaintiff's theory of beneficiary liability is clearly expressed in her Complaint. *See* Complaint at ¶ 13, 60, 100.  Relying on *Geiss v. The Weinstein Company Holdings LLC*, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019), IHC attempts to allege that the proper standard for a "knowing benefit" is that Plaintiff must show constructive or actual knowledge of "a causal relationship," or that the trafficker provided benefits to IHC *because* of IHC's facilitation of the trafficker's misconduct. However, IHC's reliance on *Geiss* is misplaced.

Since 2008, there are three distinct causes of action under §1595: 1) §1595 perpetrator trafficking claims against a person who directly violates §1591(a)(1); 2) §1595 perpetrator financial beneficiary claims against a person who directly violates §1591(a)(2); and 3) §1595 financial beneficiary claims against a civil defendant who has not violated §1591 at all, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person *knew or should have known* has engaged in an act in violation of this chapter." 18 U.S.C.A. § 1595(a) (emphasis added); *see, e.g., Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1305, 1312 (M.D. Ga. 2018)

(accepting that perpetrator claims are separate and distinct from financial beneficiary claims).  In *Geiss*, the plaintiff only asserted §1595 perpetrator trafficking claims against defendants who directly violated §1591(a)(1), and §1595 perpetrator financial beneficiary claims against defendants who directly violated §1591(a)(2). *See Geiss*, 383 F.Supp.3d at 168-169. Therefore, the case is inapposite to the instant §1595 financial beneficiary claim against civil defendants not alleged to have violated §1591.[6]

For this reason, most of the limited cases on point have not required the narrow definition of 'knowing benefit' that IHC suggests for civil claims under §1595 against financial beneficiaries who are not alleged to have violated §1591.  In *M.A. v. Wyndham*, the court found that because Plaintiff alleged the hotel defendants "rented rooms to her trafficker and therefore benefitted financially, the rental of a hotel room constitutes a financial benefit sufficient to meet the 'knowing benefit' element of the § 1595(a) standard." *See M.A. v. Wyndham*, 2019 WL 4929297 at *7; *see also H.H. v. G6 Hospitality, LLC,* 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Gilbert v. United States Olympic Committee*, No.18-cv-00981-CMA-MEH, 2019 WL 4727636 at *16 (holding that for §1595(a) liability premised on § 1589(b), the defendant is not required to benefit from the forced labor or services).  This limited universe of case law maintains that one is not exposed to potential liability under §1595 unless they have participated in a venture in order to benefit and have benefited. *See Ratha v. Phattana Seafood Co., Ltd*, CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Calif. Dec. 21, 2017) (the Court held, at the pleading stage, plaintiffs sufficiently alleged violations of TVPRA, and later granted defendant's motion for summary judgement after facts showed defendant incurred no benefit from business relationship with problem facility).

---

[6] To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove the criminal violation of §1591. A perpetrator trafficking claim requires knowing participation in the direct sex trafficking activities listed in §1591(a)(1). Likewise, a perpetrator financial beneficiary claim requires allegations the defendant "*knowingly assist[ed], support[ed], or facilitate[ed]" the direct sex trafficking violation of § 1591(a)(1) and financially benefitted therefrom.*" *Geiss v. The Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. Apr. 18, 2019).

IHC superficially suggests that this application effectively erases the word "knowingly" in "knowingly benefits." The "knew or should of known" standard applies to the defendants mental state regarding the conduct of the venture in question that is in violation of §1591. To argue the same for the placement of the mental state "knowingly" at the beginning of the statute would make the statute both repetitive and contradictory. Instead, "knowingly" applies only to the benefit derived from "participation in a venture," and is inserted at the beginning of the statute to confine liability to those who have intentionally entered a venture to benefit and indeed have benefitted. In no way does the inclusion of the term "knowingly" require a causal relationship between the conduct of the venture in violation of §1591 and the benefit incurred by IHC.

### iii.    Plaintiff Has Pleaded Sufficient Facts to Show IHC Knew or Should Have Known that the Venture Engaged in Sex Trafficking.

Plaintiff has sufficiently alleged that IHC knew, or should have known, that their venture with her trafficker was sex trafficking in violation of the TVPRA. Plaintiff brings a pure financial beneficiary claim "under §1595(a), which use the words 'should have known,' and therefore invokes a negligence standard" for defendant who are not alleged to be perpetrators of Section 1591. *M.A. v. Wyndham*, 2019 WL 4929297 at *8; *Accord H.H. v. G6 Hospitality, LLC,* 2:19-CV-755, 2019 WL 6682152. In this regard, it is well-established that plaintiff  "does not need to prove reckless disregard under §1595(a), only that the Defendants 'should have known' about the nature of the venture under a negligence standard [and] this does not require evidence of actual knowledge or conspiracy between the Defendants and the trafficker." *M.A. v. Wyndham*, 2019 WL 4929297 at *9; *see Gilbert v. United States Olympic Committee*, No.18-cv-00981-CMA-MEH, 2019 WL 4727636 at *19 (D. Colo. Sept. 27, 2019) (affirming that for non-perpetrator liability under §1595(a) the standard is "knew or should have known").

IHC is entirely incorrect in its statement that "[f]ederal courts have generally associated the 'knew or should of known' standard with actual knowledge or reckless disregard." *See* Motion at 10.  In support, IHC cites to *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017); however, such reliance is misplaced. In *Ricchio*, the court did not analyze or address a stand-alone financial beneficiary claim under §1595(a) and took careful efforts to state that the summary of the claims provided in its decision do not "exhaust every variation of statutory violation, and basis for civil liability." *Id.*  Indeed, in *Ricchio*, Claims 1-7 all alleged some form of perpetrator liability under §§1589, 1590, 1591, or 1593A and, therefore, by the language of each respective section, require a criminal *mens rea* of either knowledge or "at the least, reckless disregard." *Id.* Consequently, IHC's assertion that the "knew or should of known language" in §1595(a), as addressed by *Ricchio*, is categorically false. In fact, courts have found that the failure to implement policies sufficient to combat a known problem in one's operation can rise to the level of willful blindness or negligence. *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 at *12 (S.D. Ohio Oct. 7, 2019) (citing *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar 26, 2009) (finding the complaint provided sufficient allegations under §1983, based on willful blindness, where defendants knew a facility supervisor raped an employee, sexual harassment at the facility was not an isolated incident, and defendants failed to implement policies to remedy and/or prevent the conduct).

Finally, IHC's argument that Plaintiff has failed to allege facts that "should have alerted" IHC to Plaintiff's trafficking is without merit. As described fully in the "Factual Background" section herein, *supra*, Plaintiff provided numerous facts in her Complaint supporting that IHC ignored the red flags with regard to the victimization of C.K. on its property. (*see* "Factual Background" section, *supra*). Indeed, Plaintiff alleged facts regarding the horror she endured at IHC's Crowne Plaza property, including being harbored at this property and the serious, visible physical abuse she endured at the hands of her

trafficker while being forced to serve buyers at the property – which supports that IHC knew or should have known. Plaintiff also alleged facts supporting that IHC was on notice about the prevalence of sex trafficking *generally* at its hotels, but failed to take adequate steps to train their personnel in order to prevent or thwart the occurrence of sex trafficking at its properties. (*see* "Factual Background" section, *supra*). For these reasons, Plaintiff has sufficiently pleaded facts with respect to IHC, thus supporting that IHC "knew or should have known" about the sex trafficking of C.K.

**B.   IHC Is a Proper Defendant In This Action Under a Direct Theory and an Imputed Theory of Liability.**

**i.   IHC is Directly Liable for Facilitating Human Trafficking.**

As demonstrated in Plaintiff's Complaint, for at least the last decade, sex trafficking is inextricably intertwined with the hospitality industry, and the failures at IHC's properties, including the Crowne Plaza, are only an incidence of larger systemic failures across the entire IHC brand. *See* Docket No. 1 at ¶ 22-47. As discussed, the TVPRA requires businesses, including businesses within the hospitality industry, to conduct a proactive analysis to determine whether the business financially benefits from participation in a sex trafficking venture. The TVPRA was drafted in the context of extant common law and sought to enforce certain existing liabilities and fill perceived gaps in common law jurisprudence to directly combat domestic sex trafficking. *See Isbrandtsen Co. v. Johnson*, 343 U.S. 779 (1952) (there is a presumption that general statutory language incorporates established common-law principles unless a statutory purpose to the contrary is evident.).  IHC is directly liable under §1595 of the TVPRA, as well as common law – and both theories of liability will be discussed, *infra*.

While the conclusive determination of the exact relationship is an issue for the trier of fact after discovery, IHC will use independent contractor language in reference to their franchisees in an attempt to evade vicarious liability. The reason for this is the general rule is an employer of an independent contractor is not liable for physical harm caused by the acts or omissions of the contractor.  However,

there is a series of long-standing exceptions under which employers *can* be held vicariously or directly liable for the tort of their contractors. *See* Restatement (Second) of Torts §§ 409-429 (1965).  Both the rule and its exceptions reflect the same underlying concerns. While the general rule supports the notion that employers should not be held responsible for that which they do not control, and in many instances lack the knowledge and resources to direct, the exceptions reflect those special situations where it is the employer who, in fact, is in the *best position* to identify and minimize risks involved in the contractor's activities. *See*  Prosser and Keeton on the Law of Torts § 71 at 509-10 (W. Keeton 5th ed. 1984).

*Wilson v. Good Humor Corp.* is a D.C. Circuit case that, while not controlling law, is highly persuasive because of how acutely the D.C. Circuit's analysis captures the issue presently before this court – how the Plaintiff establishes that IHC owed the Plaintiff a direct duty. *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (1985).  In *Wilson*, the plaintiffs are the parents of a three-year-old girl who was struck and killed by an automobile while crossing the street to meet a Good Humor ice cream truck. The Wilsons brought a wrongful death claim against the Good Humor Corporation for direct negligence because Good Humor's vendors engaged in "inherently dangerous" activity, or activity likely to create "peculiar risks" under specific circumstances.  By means of a directed verdict, the district court ruled that Good Humor could not be found liable under the "inherent danger" exception because the selling of ice cream is not a generally dangerous activity that "can be treated in the same terms as the use of blow torches on pipes, conducting controlled explosions, or things of that nature, which is the sort of conduct the cases speak of in terms of inherently dangerous activities." *Id.* at 1303.

However, the circuit court reversed the decision on appeal, holding that the district court erred in applying too narrow a view of the inherent danger doctrine and its rationale. Instead, the circuit court concluded that Good Humor *could* be held directly liable if a jury found the corporation "knew, or had special reason to know that its operation was likely to create, under particular circumstances, a *peculiar*

*risk* to children absent special precautions, and did absolutely nothing to minimize or even warn its vendors of that risk." *Id.* (emphasis added).  Citing The Restatement of Torts, the court identified that intimately related to the inherently dangerous doctrine is the distinct peculiar risk exception to the general rule of employer non-liability in which "one who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, *or which he contemplates or has reason to contemplate when making the contract*, is subject to liability for physical harm caused to such others by the contractors failure to take reasonable precautions against such danger." *Id.*

In *Wilson*, evidence that Good Humor recognized the fact that curbside sales of ice cream created special hazards for customers, especially children, was sufficient in the court's opinion to support a jury finding that Good Humor is direct liability under the inherent danger *or* peculiar risk doctrines. In the instant matter, Plaintiff has provided similar evidence that IHC at least recognized that indiscriminately providing lodging with no questions asked has created a petri dish wherein the human trafficking and commercial sex trade are allowed to flourish and thrive, thus breeding a distinct hazard for all potential victims – and this is likely only the tip of the evidentiary iceberg.  *See* Complaint at ¶¶ 13, 18-54, 60, 72-79.

The court in *Wilson* was also careful to highlight that Good Humor's liability arises from the fact that "Good Humor vendors are engaged to perform the bulk of Good Humor's business and that Good Humor undoubtedly contemplates that they will do so through the curbside sale of Good Humor products from Good Humor trucks … that the vendors do not possess any special experience or knowledge concerning the risks peculiar to their task and Good Humor by contrast has special and detailed knowledge of the peculiar risks to children involved in its operation and is in the best position to ensure reasonable safety awareness." *Wilson*, 757 F.2d at 1306. Similarly, IHC is a hotel brand whose

contractors/franchisees run all of its hotels, and IHC undoubtedly contemplates that said contractors/franchisees will do so through indiscriminately providing lodging at IHC branded properties while IHC collects royalty payments on each sale. And, while the majority of the IHC's contractors/franchisees do not possess any special experience or knowledge concerning the risks peculiar to their task, IHC has special and detailed knowledge concerning the peculiar risk of sex trafficking in their operations and is in the best position to ensure reasonable safety awareness and precautions. Therefore, as the failure proves to be systematic across the entire IHC brand, it is clear that the negligence is that of the franchisor – more so than the franchisee.[7]

### ii. IHC is Indirectly Liable for Facilitating Human Trafficking Through the Imputed Conduct of IHC's Franchisors, Franchisees, and/or Hotel Operators.

#### 1. Plaintiff's Complaint Properly Alleges an Agency Relationship Exists by and Among IHC and its Agents, including Crowne Plaza.

Whether an agency relationship exists is for the trier of fact to decide. *See West v. LQ Management, LLC*, 156 F. Supp. 3d 1361, 1370 (S.D. Fla. 2015). "It is well established that franchisors enter into an agency relationship with a franchisee 'if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee.'" *Knowles v. McDonald's USA, LLC*, 2018 WL 8244277 *6 (S.D. Fla. Feb. 9, 2018); *see West*, 156 F. Supp. 3d at 1371.

"The essential elements of an *actual* agency relationship are: 1) acknowledgment by the principal that the agent will act for him or her, 2) the agent's acceptance of the undertaking, and 3) control by the principal over the actions of the agent." *Font v. Stanley Steemer Intern., Inc.*, 849 So.2d

---

[7] This same analysis applies to Plaintiff's allegation that IHC is directly liable to the Plaintiff as a financial beneficiary from sex trafficking under the TVPRA. While the liability is statutory, it warrants repeating that it is IHC who possesses the special and detailed knowledge of the peculiar risks of human trafficking in its operation and is in the best position to ensure reasonable safety awareness and precautions.

1214, 1216 (Fla. 5th DCA 2003). "A franchisor may be held vicariously liable under an agency theory for the tortious acts of a franchisee, or a franchisee's employee, when the franchisor has direct control of, or the right to control, the day-to-day operations of the franchisee. Applying the 'control' test to a franchise is not an easy undertaking because franchises have independent aspects to them, but they must also retain some control over the use of their names, goods and services." *Domino's*, 248 So.3d at 222. "In order to establish a claim based on *apparent* agency, three elements must be proven: 1) a representation by the purported principal, 2) a reliance on that representation by a third party, and 3) a change in position by the third party in reliance on the representation." *Jackson Hewitt, Inc. v. Kaman*, 100 So.3d 19, 32 (Fla. 2d DCA 2011) (internal cite omitted). "The question of apparent agency is left to the jury." *West*, 156 F. Supp. 3d at 1372.

Plaintiff alleges a number of facts in her Complaint to support an agency relationship by and among IHC and Crowne Plaza. *See* Complaint at ¶¶ 13, 48-54, 60. IHC, as principal, acknowledges Crowne Plaza as agents, acting on behalf of IHC through their franchise agreements and their use of the IHC name and likeness. *Id.* at ¶¶ 48, 52. In return, Crowne Plaza, as an agent, accepts the undertaking through their franchise agreement with IHC and payment of royalties to IHC. *Id.* at ¶¶ 48, 51-52. Plaintiff alleges how Wyndham exercises control over Howard Johnson and Microtel hotels through: (a) the use of IHC's name and likeness; (b) setting and enforcement of hotel standards at IHC hotels; (c) termination of franchise agreement for non-compliance; (d) distribution of employee information on human trafficking; (e) providing a process of human trafficking concerns by and among IHC and Crowne Plaza hotels; (f) employee training and education of human trafficking; (g) inspection and auditing protocols for detection and prevention of human trafficking; (h) bookings and rewards programs through IHC; (i) employment decisions including employee wages; and (j) building and facility maintenance. *Id.* at ¶¶ 48-54, 60.

16

As such, IHC's suggestion that Plaintiff is merely reciting the law on agency in conclusory fashion in her Complaint is untethered to reality. The allegations in Plaintiff's Complaint, as discussed, *supra*,  identify numerous factual allegations in support of an actual agency theory of liability by and among IHC and Crowne Plaza. Additionally, Plaintiff alleges an apparent agency theory of liability by and among IHC and Crowne Plaza, as IHC holds itself out to the public as the owner and/or operator of IHC and Crowne Plaza hotels through booking at these hotels through online booking sites and obtaining rewards for booking at these hotels, among other things. *Id.* at  ¶¶ 48-54. These factors all support a level of control and dominion by IHC over its franchisees and hotel operators that should be examined in discovery as to whether an agency relationship exists to impute the liability of Crowne Plaza, the agent, to IHC, the principal. For this reason, the Motion should be denied.

### 2.      IHC is a Proper Party to the Action as an Alter Ago of Crowne Plaza.

"In determining whether the corporate veil of a subsidiary corporation can be pierced to impose liability on a parent, the law of the state of incorporation is to be applied." *Sparton Electronics Florida, Inc. v. Electropac Co., Inc.*, 2006 WL 2711842 *2 (M.D. Fla. Sep. 21, 2006) (internal cite omitted).  "In order to succeed on an alter ego theory of liability, plaintiff must essentially demonstrate that, in all aspects of the business, the corporations actually functioned as a single entity and should be treated as such." *Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010) (internal cite omitted).  "Under the single entity test, the Third Circuit has considered seven factors in determining whether a corporation operated as a single economic entity: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) whether the corporation is merely a facade." *Id.* at 470-71.  "An alter ego

relationship may arise where 'a corporate parent exercises complete domination and control over its subsidiary.'" *Id.* at 470.

Plaintiff alleges a number of facts in her Complaint to support an alter ego theory of liability through IHC's control over the operating hotels, including numerous examples of IHC exerting dominance and control in support of a single entity test. *See* Complaint at ¶ 13, 48-54, 60. Plaintiff should be allowed to discover what level of control IHC exerts over its franchisors and franchisees who operate IHC branded hotels through the franchise agreements IHC enters into with the franchisors and franchisees who operate IHC branded hotels, and whether its franchise agreements contractually attempt to relieve them of liability for conduct occurring at its properties. The examination of facts such as these should be addressed in discovery on the merits, not at the pleadings stage. For this reason, the Motion should be denied.

**C.      Plaintiff's Complaint Is By No Means a "Shotgun Pleading" In Violation of Rule 8.**

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint meet the pleading standards of Federal Rule of Civil Procedure 8.   In relevant part, Federal Rule of Civil Procedure 8 states "a sufficient complaint must contain 'a short and plain statement of the grounds for the court's jurisdiction,' 'a short and plain statement of the claim showing that the pleader is entitled for relief,' and 'a demand for relief sought.'" *West v. Warden, Commissioner, Alabama Doc*, 869 F.3d 1289, 1300 (11th Cir. 2017) citing Fed. R. Civ. P. 8(a).   Pointedly, "what [Rule 8] does not require is a response by the pleader to arguments made by an opposing party based on that party's subjective interpretation of the pleader's complaint." *Id.*   Therefore, when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in the light most favorable to the plaintiff." *Levine v. World Financial Network Nat. Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006) (internal cite omitted).

IHC cites *Weiland v. Palm Beach Cnty. Sheriffs Office*, 792 F.3d 1313, 1325 (11th Cir. 2015), for the proposition that this Court should dismiss the Complaint based on Fed. Rules Civ. Pro. 8(a)(2) and 10(b). However, dismissal pursuant to Rules 8(a)(2) and 10(b) is only appropriate where "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id*. (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F. 3d 364, 366 (11th Cir. 1996) (emphasis added)). In *Weiland*, the court found no such virtual impossibility existed in the case. *Id*. It is Plaintiff's position that as in *Weiland*, the claims and supporting facts have been alleged with enough clarity that IHC (and the other Defendants) have been put on notice of the claims against them. The fact that multiple defendants are involved is not indicative of a "shotgun" pleading, as alleged by Wyndham. It is simply a reality – the sex trafficking of C.K. and the abuse and victimization she was forced to endure involved *multiple* hotels. Hence the involvement of multiple Defendants, including Wyndham. Further, in *Weiland*, the court ruled that counts which are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted *should not be dismissed*, while simultaneously "not retreating from [the] circuit's criticism of shotgun pleadings." 792F.3d at 1326. The same is true here; Plaintiff has outlined the claims sufficiently by providing facts and allegations specific to each Defendant, including Wyndham. *See* Complaint at ¶¶ 55-96.

In satisfying Rule 8, the Complaint adequately puts IHC on notice of the specific claims against them, the factual allegations that support those claims, and the pertinent laws and statues relevant to the claim. Even assuming the claim could have been pleaded differently, that alone does not merit dismissal – and certainly not where the facts and legal claim at issue are manifest. *See Weiland*, 792 F.3d at 1325 ("Count one is not a model of efficiency or specificity, but it

does adequately put Fleming and Johnson on notice of the specific claims against them and the factual allegations that support those claims.").

As a final point, it is well-established that "courts in this district have found that not every count involving multiple claims is a shotgun pleading . . . [t]o the contrary, a plaintiff need not separate her claims where they arise out of the same transaction or occurrence and defendants are provided with adequate notice." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1138 (M.D. Fla. 2018) (citing *Howard v. Wells Fargo Bank, N.A.*, No. 6:16-CV-505-PGB-TBS, 2016 WL 3447514, at *3 (M.D. Fla. June 23, 2016)); *see also Amegy Bank Nat. Ass'n v. Deutsche Bank Corp.*, 917 F. Supp. 2d 1228, 1233 (M.D. Fla. 2013)). Indeed "notice is the touchstone of the Eleventh Circuit's shotgun pleading framework." *Id*. (citing *Weiland*, 792 F.3d at 1323). Therefore, notice is properly satisfied here.

Regardless of the fact that multiple Defendants are involved in the victimization and horror C.K. was forced to endure, Plaintiff sufficiently pleaded facts regarding IHC's conduct supporting that IHC had, or could have had, the requisite knowledge that C.K. was being trafficked at its hotel property and could have taken action, but instead turned a blind eye and benefited financially. Therefore, C.K.'s Complaint is by no means a "shotgun pleading," as alleged by IHC.

## V.    **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests this Court deny IHC's Motion to Dismiss in full.  In the alternative, should the Court be inclined to grant, in whole or in part, the Motion to Dismiss, Plaintiff hereby respectfully requests that such a dismissal be without prejudice.


Dated: March 18, 2020                                  Respectfully submitted,

                                                       */s/ T. Michael Morgan*
                                                       T. Michael Morgan (FBN: 0062229)
                                                       **Morgan & Morgan, PA**
                                                       20 N. Orange Avenue

Orlando, FL 32801
Telephone: (407) 418-2031
Facsimile:  (407) 245-3384
Email: mmorgan@forthepeople.com

Ashley B. Landers (KBN: 98399) *PHV*
**Morgan & Morgan, PA**
333 W. Vine Street, Suite No. 1200
Lexington, KY 40507
Telephone: (859) 873-7406
Facsimile:  (859) 899-8805
Email: alanders@forthepeople.com

*Attorneys for Plaintiff, C.K*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2020, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record.

*/s/ T. Michael Morgan*