UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| C.K., an individual,<br><br>       Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS AND RESORTS, INC., *et al*.<br><br>       Defendants. | Case No. 3:19-cv-01412-MMH-MCR |

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S <u>COMPLAINT</u>

i

EAST\173631596.2

Defendant Marriott International, Inc. ("Marriott International"), submits this Reply in support of its motion to dismiss ("Motion") plaintiff C.K.'s (the "Plaintiff" or "C.K.") Complaint (ECF No. 1, hereinafter, the "Complaint" or "Compl."), in its entirety, with prejudice, because it fails to state a claim on which relief can be granted.

## INTRODUCTION

To support its TVPRA claim, Plaintiff's response in opposition to Marriott's Motion (ECF No. 81, hereinafter "Opposition" or "Opp.") relies on a radical construction of the TVPRA that would turn that statute on its head—creating liability for any business which *fails to affirmatively prevent* sex trafficking by third party criminals, instead of applying the actual words of the statute, which impose liability on those who *knowingly participate in* a trafficking venture with such criminals. The Opposition's untenable construction cannot be squared with the text of the TVPRA or the many cases which have applied it. To be sure, Marriott International has been an industry leader in addressing human trafficking, including developing and implementing training around the world, and it unequivocally condemns all forms of sexual exploitation. But there simply is no support for the sweeping proposition that Congress intended to render Marriott International or other franchisors civilly liable for failing to detect and prevent criminal acts committed by unknown third parties against unknown persons on the premises of their many franchisees. And nothing in the Opposition points to a single allegation which could cure the Complaint's failures to allege any facts plausibly suggesting that Marriott somehow knowingly "benefitted from," let alone "participated in," the sex trafficking of C.K. These defects are fatal under the TVPRA.

The rest of the Opposition is a model of evasion. At every turn, it fails to address the dispositive arguments in Marriott International's Motion. Most fundamentally, instead of distinguishing the controlling Florida authorities on franchisors' liability for the acts or omissions

of franchisees, the Opposition lists numerous allegations pertinent to "significant say so and involvement in day-to-day operations" in an attempt to show that Marriott International is vicariously liable for the acts or omissions of the staff at the Four Points by Sheraton Jacksonville Baymeadows or the Sheraton Jacksonville (together, the "Sheraton hotels"). However, the Opposition's summary of allegations only demonstrate that Marriott International did *not* exercise the day-to-day control over the Sheraton hotels that would be necessary to establish vicarious liability. The rest of the Opposition follows the same pattern, failing to engage meaningfully with the controlling authorities with respect to Rule 8 and the Complaint's shotgun pleading against multiple distinct defendants involving alleged criminal acts at multiple hotel franchise properties over a five-year period. Accordingly, the Court should dismiss Complaint with prejudice.

## ARGUMENT

**I.  THE TVPRA DOES NOT IMPOSE CIVIL LIABILITY FOR FAILING TO PREVENT SEX TRAFFICKING.**

The crux of Plaintiff's Opposition is that Congress intended, by amending the TVPRA, to impose a radical "paradigm shift" by regulating "the entire hospitality industry." Opp. at 5. Specifically, the Opposition argues that franchisors must "conduct a proactive analysis to determine whether the business financially benefits from participation in a sex trafficking venture" and "take affirmative steps to prevent sex trafficking on their properties." *Id.*; Opp. at 11-12. The Opposition then goes even further and argues that franchisors must, "exert some meaningful effort to appraise themselves of the activities – especially flagrant criminal activities – at their hotel properties," although precisely what these efforts are Plaintiff never specifies. *Id.* at 5. It is unsurprising that the Opposition cites no relevant authority or legislative history to support its sweeping revision of the TVPRA. In fact, the 2008 amendment to the TVPRA extended civil liability beyond direct perpetrators of sex trafficking to those who "knowingly benefit[],

2

financially or by receiving anything of value from participation in a venture which [they] knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

There is not the slightest indication from this amendment that Congress intended to impose an affirmative duty on the hospitality (or any other) industry to "conduct a proactive analysis," or perform law enforcement functions as suggested by the Plaintiff. Opp. at 5. The Opposition cites generic canons of construction, including that courts should consider a statute as a whole and give meaning to each clause. *Id.* at 6. To the extent these canons have any application here, they *undercut* Plaintiff's construction, which erases key words and phrases from the statute (*e.g.*, "*knowingly* benefits" and "*participation in* a venture") while appending a host of imagined regulatory standards onto it. Other canons also undercut the Plaintiff's construction, such as the canon that "statutes should receive a sensible construction . . . so as to avoid an unjust or absurd conclusion." *United States v. Ballinger*, 395 F.3d 1218, 1237 (11th Cir. 2005) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979)). Plaintiff's construction generates absurd results: every business which might have engaged in a routine commercial transaction concerning C.K. or her traffickers (*e.g.*, an unwitting taxi driver transporting C.K. to her next destination), no matter how attenuated to the sex trafficking venture, would be civilly liable if it failed to actively investigate, police, and somehow prevent the trafficking. This turns the statute on its head: creating liability for somehow *failing to prevent* sex trafficking crimes, instead of liability for *knowingly participating in* such crimes. Only the latter is actionable.

The Opposition fails to engage meaningfully with the cases applying the TVPRA. Those cases, unlike what the Opposition seeks to do, have considered the statute as a whole, given effect to each of its clauses, and refrained from creating regulatory standards by judicial fiat. Granting motions to dismiss in favor of franchisors, the Northern District of Georgia court recently held

3

that:

> TVPRA claims require Plaintiff to allege that the Defendants *participated in ventures* that were *engaged in sex trafficking* and that they each had three separate *types of knowledge* with respect to that venture: (1) *knowledge* as to the benefit received from trafficking; (2) *knowledge* as to 'assisting, supporting or facilitation' trafficking; and (3) *knowledge* that the Plaintiff was either a minor or subject to force.

*Jane Doe 1 v. Red Roof Inns, Inc. et al.*, 1:19-cv-3840 (N.D. Ga. Apr. 13, 2020) (ECF No. 282 at 8) (emphasis added).[1] Like the complaints in the *Jane Doe 1 through 4* matters, the Complaint here also fails to state a TVPRA claim.

*First*, Marriott International neither "knew or should have known" that C.K. was being victimized by sex traffickers nor "knowingly benefitted" from her trafficking. Plaintiff insists that general knowledge about trafficking in the hospitality industry is enough (Opp. at 7), but that is not so. Instead, Plaintiff must plead facts giving rise to a reasonable inference that Marriott International knew or should have known about *C.K.'s* trafficking and "knowingly benefitted" from it. *See, e.g.*, *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 n.5 (S.D.N.Y. 2019) ("Apart from the constructive knowledge provision, the operative language of the TVPRA civil remedy and the underlying criminal statute are identical. I therefore consider the 'benefits' element to have the same content in both provisions."); *Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASX), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017); *Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018). The underlying principle remains the same regardless of a case's procedural posture: a plaintiff must plead, proffer evidence, and ultimately prove relevant knowledge of the *plaintiff's*

---

[1] Similar decisions were issued granting motions to dismiss in *Jane Doe 2 v. Red Roof Inns, Inc. et al.*, 1:19-cv-3841 (N.D. Ga. Apr. 13, 2020); *Jane Doe 3 v. Red Roof Inns, Inc. et al.*, 1:19-cv-3843 (N.D. Ga. Apr. 13, 2020); and *Jane Doe 4 v. Red Roof Inns, Inc. et al.*, 1:19-cv-3845 (N.D. Ga. Apr. 13, 2020).

EAST\173631596.2

trafficking, not just generalized knowledge that sex trafficking existed.

Here, the Complaint's failure to allege anything that could have given rise to a plausible inference that Marriott International knew or should have known of C.K.'s trafficking or that it "knowingly benefitted" from such a crime is a fatal defect requiring dismissal. The Opposition primarily references C.K.'s arrest for prostitution at the Four Points Jacksonville Baymeadows. Opp. at 2 citing Compl. ¶ 68. Even this allegation, however, is insufficient to establish that Marriot International knew or should have known of C.K.'s trafficking. *See Lawson v. Rubin*, No. 17 Civ. 6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018). The Opposition then refers to the same general "red flags" that allegedly occurred at each of the "Defendant" hotel franchise properties (Opp. at 2-3, 7 (citing Compl. ¶¶61-83)); however, there are no allegations of specific contact between C.K. and the hotel operators' staff at the different Sheraton hotels, let alone contact with any Marriott International employees. Absent any facts that Marriott International knew or should have known of C.K.'s trafficking, Marriott International similarly could not have "*knowingly* benefitted" from any trafficking venture.

This defect also underscores why Plaintiff's heavy reliance on *M.A. v. Wyndham Hotels & Resorts Inc., et. al*. Case No. 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) and *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) is misplaced. Opp. at 6-11. In the first instance, these are outlier cases issued by the same judge outside the Eleventh Circuit, contrary to the weight of authority in construing the TVPRA.[2] In fact, allegations about sex trafficking and the hotel industry, in general, not only are insufficient to state a TVPRA claim, but they also constitute redundant, immaterial, impertinent or scandalous matter that should

---

[2] Recognizing this, similar TVPRA claims based on this theory were filed against franchisors in an attempt at a consolidated MDL proceeding before that chosen court. That attempt failed.

be stricken under Rule 12(f). *Jane Doe 1*, ECF No. 282 at 12. *M.A.* and *H.H.* are not controlling on this Court, and they are at odds with the plain text of the TVPRA, which requires "participation in" a sex trafficking venture. *See infra.* In any event, there are no allegations which support any plausible inference that Marriott International was willfully blind to C.K.'s sex trafficking. There are no allegations that C.K. ever dealt with Marriott International. The allegations regarding signs of trafficking to the hotel operators' staff (who are not Marriott International's employees or agents), do not support any plausible inference that Marriott International was willfully blind to (or should have known about) C.K.'s sex trafficking.

*Second*, the Opposition ignores the Complaint's failure to allege *any* participation in C.K.'s trafficking. *See, e.g.*, *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016). "Participation in a venture" requires more than "mere negative acquiescence." *Afyare*, 632 F. App'x 272 at 282. "Association alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking act itself must be shown.'" *Jane Doe 1*, ECF No. 282 at 8-9 (citing *Noble, supra*, and *Afyare, supra*). Thus, the dispositive question is whether Marriott International made an *overt act* of participation in the sex-trafficking act. *Afyare*, 632 F. App'x at 286. It did not. The Opposition (at 3 and 8) cites to conclusory portions of the Complaint about the hotels' alleged "facilitation" based on renting rooms (Compl. ¶¶84-99), awareness of sex trafficking generally (Compl. ¶¶41, 57), and reasserts that the renting of rooms is sufficient under the *M.A.* decision (Opp. at 8) – but fails to cite any facts supporting an overt act by Marriott International in the sex trafficking venture. The mere renting of hotel rooms by a franchisee is irrelevant because as discussed above, the Complaint fails to allege that Marriott International knew or should have known about the sex trafficking venture. If Marriott

6

International did not even know and could not have known about the sex trafficking venture, then it could not have participated in such venture. Accepting Plaintiff's position "would create a vehicle to ensnare conduct that the [TVPRA] never contemplated." *Afyare*, 632 F. App'x at 286.

While characterizing the weight of authority cited by Marriott International as "non-controlling" (Opp. at 10), Plaintiff glosses over the fact that the authorities on which the Opposition relies support Marriott International and equally require dismissal.[3] In particular, *Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) highlights the extent of conduct required for participation. There, the plaintiffs alleged that lawyers, after having allegedly received "*graphic evidence of the ceremonial rape of little girls*" nonetheless actively discussed and helped their co-defendant "develop[] a scheme" to continue to "cloak forced labor and ritual rape of young girls" that they had seen. 918 F.3d at 874-75 (emphasis added). Thus, *Bistline* involved factual allegations of the defendant's knowledge of the sex trafficking of the specific plaintiff involved as well as active *participation* in that trafficking venture. In contrast, the Complaint does not (and cannot in good faith) make remotely analogous allegations regarding Marriott International.

*Bistline* also makes clear that the TVPRA defines "venture" as "any group of two or more individuals *associated in fact*…" *See id.* at 873 (emphasis added). That definition closely tracks the definition of "enterprise" in the RICO Act; both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) *with* 18 U.S.C. § 1961(4). To be "associated in fact" persons must be "associated together *for a common purpose*." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). The Complaint does not (and cannot in good faith) allege that

---

[3] For example, in *Jean Charles v. Perlitz*, the complaint alleged that the defendant knew of at least one victim who was living at the perpetrator's home and actually witnessed the perpetrator show at least one victim a pornographic video. *Perlitz*, 937 F. Supp. 2d 276, 288 (D. Conn. 2013). In stark contrast, no such allegations of direct knowledge exist here.

Marriott International shared any such purpose with C.K.'s traffickers.

*Lastly*, the suggestion of direct liability through a common law exception to the vicarious liability rule lacks merit. Opp. at 11-12 (arguing "special situations where it is the employer who is in the best position to identify and minimize the risks involved in the contractor's activities."). The only case cited, *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (D.C. Cir. 1985), is as Plaintiff admit "not controlling law" (Opp. at 12) and is a red herring in any event. *Good Humor* involved the doctrine of inherently dangerous activities, which Florida has cabined to circumstances in which a duty arises where "danger inheres in the performance of the work [of the contractor]." *American Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So.2d 459, 468 (Fla. 2005) (internal citation omitted). The daily operations of hotels are left to the discretion and control of independent hotel managers. No law in Florida or anywhere else has held that operating a hotel is an "inherently dangerous activity" such that a franchisor can be held vicariously liable for the acts of a hotel manager of a franchisee hotel. Indeed, any such principle would contravene Florida's jurisprudence on franchisor liability as discussed below.

## II.   PLAINTIFF'S OPPOSITION FAILS TO ASSERT ANY BASIS FOR VICARIOUS LIABILITY.

To establish an agency relationship necessary to support a claim for vicarious liability, the franchisor must have control over the day-to-day operations of the franchisee. *Madison v. Hollywood Subs, Inc.*, 997 So.2d 1270, 1271 (Fla. 4th DCA 2009). Most importantly, the Supreme Court of Florida has held that providing contractual franchise support services – similar to Plaintiff's allegations here – is not sufficient for an agency relationship. *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 120 (Fla. 1995); *see also Jane Doe 1*, ECF No. 282 at 12 (holding that allegations consistent with an ordinary franchise relationship "(e.g. brand standards, a contractual right to inspect, a contractual right to terminate for noncompliance, etc.)" do not give rise to

8

vicarious liability). The Opposition avoids addressing any of the controlling authorities in Marriott International's Motion at 14-16, *supra*, which make clear that the right to enforce uniform standards on a franchisee (Opp. at 16-17) is not sufficient to give rise to vicarious liability. Indeed, the bulleted list on pages 16 and 17 of the Opposition, which summarize the Complaint's relevant allegations, demonstrate why this Complaint should be dismissed: *none* of these allegations suggests that Marriott International had control over the day-to-day operations of the Sheraton hotels. *Madison*, 997 So.2d at 1271.

For these same reasons, the apparent agency claim fails. Providing reservation services or a loyalty program for the Sheraton hotels (Opp. at 17, citing Compl. ¶¶48-54) is not sufficient for indicating that "the franchisor was *in substantial control* of the business." *Estate of Miller v. Thrifty Rent-A-Car Sys. Inc.*, 637 F. Supp. 2d 1029, 1041 (M.D. Fla. 2009) (emphasis added) (finding that use of name, reservation system and requirements to meet performance standards "are typical of franchise relationship" and do not establish vicarious liability).[4]

Marriott International also cited numerous federal courts which, applying similar principles of the law of agency, dismissed complaints against franchisors for failure to state a claim. *See*, Marriott Mot. at 15 (citing cases). The Opposition suggests that the existence of an agency relationship cannot be determined at this stage but fails to even acknowledge (let alone distinguish), a *single* one of these authorities.

Plaintiff's only other response is to suggest that the Sheraton hotels are Marriott

---

[4] Apparent agency exists only if: (a) a representation of substantial control by the purported principal; (b) reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. *Bransford*, 648 So.2d at 121. The plaintiff must show that the purported principal represented to her or acted in such a way as to lead her to believe that the purported agent was, in fact, its agent, and that such reliance was reasonable. *Jackson Hewitt, Inc. v. Kaman*, 100 So.3d 19, 32 (2011). The Opposition does not address these elements.

9

International's alter-ego. Opp. at 15-17 (contending that "[a]n alter ego relationship may arise where 'a corporate parent exercises *complete domination and control* over its subsidiary.'"). The corporate veil will not be pierced absent pleading of "instrumentality and improper conduct." *Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 679 (M.D. Fla. 1999); *Christie v. Bank of Am., N.A.*, No. 8:13–cv–1371–T–23TBM, 2014 WL 5285987 at *5 (M.D. Fla. Oct. 15, 2014) (finding that improper conduct is present only in cases in which "the corporation was a mere device or sham to accomplish some ulterior purpose ... or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose."). The Complaint lacks any allegations which could plausibly support any instrumentality and improper conduct, and it does not (and cannot in good faith) allege that Marriott International exercises c*omplete domination and control* over its franchisees.

### III.   THE COMPLAINT VIOLATES THE PROHIBITION ON SHOTGUN PLEADINGS.

Shotgun pleadings are prohibited because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law … can be masked." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). That is precisely the case here: where allegations are made regarding C.K. specifically, the Complaint carefully avoids mentioning which Defendant or hotel was allegedly involved in the acts over a five year period from 2008 to 2012, referring to "Defendants' hotels" or "Defendants" collectively and failing to allege what *Marriott International* is alleged to have done. *See, e.g.*, Compl. ¶¶ 61-83. Such "shotgun" pleading denies Marriott International the notice to which it is entitled. *Weiland*, 792 F.3d at 1320.

### CONCLUSION

For the foregoing reasons and those in its Motion, Marriott International respectfully requests that the Court grant its motion to dismiss the Complaint with prejudice.

10

Dated: April 20, 2020                           Respectfully submitted,


                                                  s/ Amanda E. Reagan
Fredrick H.L. McClure
Florida Bar No. 147354
Amanda E. Reagan
Florida Bar No. 92520
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email: fredrick.mcclure@us.dlapiper.com
       amy.reagan@us.dlapiper.com
       sheila.hall@us.dlapiper.com

Ellen E. Dew (*pro hac vice* forthcoming)
**DLA PIPER LLP (US)**
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Phone:  410-580-3000
Fax:  410-580-3001
Email: ellen.dew@dlapiper.com

*Attorneys for Defendant*
*Marriott International, Inc.*


# CERTIFICATE OF SERVICE

    I hereby certify that on April 20, 2020, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record as listed below.

                                                  s/ Amanda E. Reagan
                                                  Attorney

**SERVICE LIST**

T. Michael Morgan
Morgan & Morgan, P.A.
20 North Orange Avenue, 16th Floor
Orlando, FL  32801
Phone:  407-418-2031
Fax:  407-245-3384
Email: mmorgan@forthepeople.com
       plarue@forthepeople.com
-and-
Ashley B. Landers (admitted *pro hac vice*)
Morgan & Morgan, P.A.
333 W. Vine Street, Suite 1200
Lexington, KY  40507
Phone:  859-873-7406
Fax:  859-899-8805
Email: alanders@forthepeople.com
-and-
Paul J. Pennock (admitted *pro hac vice*)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY  10003
Phone:  212-558-5549
Fax:  212-344-5461
Email: ppennock@weitzlux.com
       lschultz@weitzlux.com
*Attorneys for Plaintiff C.K.*

Michael A. Holtmann
Brandon J. Hechtman
Wicker Smith O'Hara McCoy & Ford, P.A.
2800 Ponce de Leon Boulevard
Suite 800
Coral Gables, FL  33134
Phone:  305-448-3939
Fax:  305-441-1745
Email: mholtmann@wickersmith.com
       bhechtman@wickersmith.com
-and-
William N. Shepherd
Holland & Knight, LLP
222 Lakeview Avenue, Suite 1000
West Palm Beach, FL  33401
Phone:  561-650-8338
Fax:  561-650-8399

Email: william.shepherd@hklaw.com
-and-
John M. Hamrick (admitted *pro hac vice*)
Holland & Knight, LLP
1180 West Peachtree Street
Suite 1800
Atlanta, GA  30309
Phone:  404-817-8500
Fax:  404-881-0470
Email: john.hamrick@hklaw.com
*Attorneys for Defendant*
*Inter-Continental Hotels Corporation*

Laura Topalli
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
111 North Orange Avenue
Suite 1200
Orlando, FL  32801
Phone:  407-203-7592
Fax:  407-648-1376
Email: laura.topalli@wilsonelser.com
-and-
Robert E. Scott, Jr. (admitted *pro hac vice*)
Marisa A. Trasatti (admitted *pro hac vice*)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
500 East Pratt Street
Suite 600
Baltimore, MD  21202
Phone:  410-962-8408
Fax:  410-962-8758
Email: robert.scott@wilsonelser.com
          marisa.trasatti@wilsonelser.com
*Attorneys for Defendant*
*Hyatt Corporation (incorrectly named as Hyatt Hotels Corporation)*

Michael E. Lockamy
Bedell, Dittmar, DeVault, Pillans & Coxe, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
Phone:  904-353-0211
Fax:  904-353-9307
Email: mel@bedellfirm.com
-and-

13

Nicole M. Perry (admitted *pro hac vice*)
Jones Day
717 Texas Street, Suite 3300
Houston, TX  77002
Phone:  832-239-3791
Fax:  832-239-3600
Email:  nmperry@jonesday.com
-and-
Bethany K. Biesenthal (admitted *pro hac vice*)
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, IL  60601
Phone:  312-782-3939
Fax:  312-782-8585
Email:  bbiesenthal@jonesday.com
*Attorneys for Defendant*
*Hilton Worldwide Holdings, Inc.*

Fredrick H.L. McClure
J. Trumon Phillips
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email:  fredrick.mcclure@dlapiper.com
         trumon.phillips@dlapiper.com
         sheila.hall@dlapiper.com
-and-
David S. Sager (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway
Suite 120
Short Hills, NJ  07078-2704
Phone:  973-520-2550
Fax:  973-520-2551
Email:  david.sager@dlapiper.com
*Attorneys for Defendant*
*Wyndham Hotels & Resorts, Inc.*

EAST\173631596.2