IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| C.K., an individual,<br><br>              Plaintiff,<br><br>-against-<br><br>WYNDHAM HOTELS AND RESORTS, INC.;<br><br>HILTON WORLDWIDE HOLDINGS, INC;<br><br>MARRIOTT INTERNATIONAL, INC.;<br><br>INTER-CONTINENTAL HOTELS, CORPORATION;<br><br>AND HYATT HOTELS CORPORATION,<br><br>              Defendants. | CIVIL ACTION NO. 3:19-cv-01412 |

**HYATT CORPORATION'S[1] REPLY IN SUPPORT
OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6)**

**INTRODUCTION**

As noted in Hyatt Corporation's ("Hyatt's") motion, this complaint was one of dozens of similar complaints that were filed in federal courts around the country. Notwithstanding that these actions were brought by different individuals and filed in different courts, the complaints shared

---

[1] As stated in Hyatt Corporation's Motion to Dismiss (Doc. 61), Hyatt Hotels Corporation was not a properly sued Defendant, as it had no association with respect to the activities alleged in this lawsuit. Hyatt's Motion to Dismiss made clear that Hyatt Corporation was the proper Hyatt-related defendant, as it is and has been the managing company at the hotel that does business as Hyatt Regency Jacksonville ("Hotel"). For the most part, Plaintiff seemingly has accepted Hyatt's position, since in its opposition to Hyatt's motion, Plaintiff refers to the defendant as Hyatt Corporation, although in footnote 2 it avers that the question of whether a corporate entity is a proper defendant cannot be decided without discovery. As was true of the original motion and because the Plaintiff addresses its opposition to Hyatt Corporation, this reply is being filed on behalf of Hyatt Corporation. To the extent the Plaintiff does not agree to dismiss Hyatt Hotels Corporation and substitute Hyatt Corporation as a Defendant, Hyatt Hotels Corporation specifically reserves it rights to raise any and all defenses to this action, including but not limited to the defense that Plaintiff has not and cannot allege sufficient facts to state a claim for vicarious liability or for piercing the corporate veil. Hyatt Corporation further notes it was not formally served with the Complaint under the Federal Rules. Hyatt Corporation will waive service to the extent Plaintiff agrees to substitute it for Hyatt Hotels Corporation.

many characteristics, including: (1) pages of allegations describing the general societal issue of human trafficking; (2) pages of sweeping general and conclusory allegations against all named defendants, including, for example, that the mere fact of a hotel company receiving payment for a room makes that company part of a criminal enterprise; (3) a few allegations concerning a instances of trafficking linked to a brand's other hotels in other states over the course of years (including alleged incidents after the plaintiff was allegedly trafficked) that they purport are sufficient to meet a "knew or should have known" standard that the plaintiff was being trafficked at another hotel in that brand's chain of hotels; and (4) very few non-specific allegations about the plaintiff being trafficked at any individual hotel linked with the defendants named in the complaint. Because some of these other similar cases were filed before this case, this Court has the benefit of being able to consider how other Courts have viewed these complaints in prior hearings and orders on motions to dismiss.  Indeed, this Court set its briefing schedule for this Reply so that it could have an opportunity to review written opinions from another influential hearing in the 11th Circuit, namely, the hearing and Orders from the Honorable Judge William M. Ray, II, in *Jane Doe 1, et al. v. Red Roof Inns, Inc., et al.* Case No. 1:19-cv-03840-WMR[2] in the Northern District of Georgia.[3]

On April 13, 2020, Judge Ray issued Orders in the *Jane Doe* cases granting the Motions to Dismiss of Franchisors and Corporate Affiliates and striking Plaintiffs' allegations from the Complaints concerning sex trafficking and the relationship between sex trafficking and the hotel industry generally. Judge Ray specifically found that (1) "the Amended Complaint does not set

---

[2] *See also, Jane Doe 2 v. Red Roof Inns, Inc.*, 1:19-cv-03841-WMR; *Jane Doe 3 v. Red Roof Inns, Inc.*, 1:19-cv-03843-WMR; *Jane Doe 4 v. Red Roof Inns, Inc.*, 1:19-cv-03845-WMR.

[3] As noted *supra* note 2, *Jane Doe 1, et al.* is comprised of four individual cases. Judge Ray issued Orders in each of the four cases, and his TVPRA and vicarious liability findings in each case are identical.

forth facts sufficient to allege plausibly that the Franchisor and Corporate Affiliate Defendants knew or should have known of the acts alleged by the Plaintiff at the hotels described above;" (2) "the Amended Complaint is lacking well-pled factual allegations sufficient to support any TVPRA claims against the Franchisor and Corporate Affiliate Defendants;" and (3) the Amended Complaint constitutes an impermissible "shotgun" pleading.[4]  While Judge Ray is allowing Plaintiff to file an amended pleading, she was ordered to recast her complaint, removing all general allegations about sex trafficking or the sex trafficking industry not related to a specific Defendant.

Preliminarily, Hyatt remains an improperly named Defendant in this matter and no justification was provided in the Opposition. Second, the Opposition, like the Complaint, employs a shotgun/group pleading that does not meet federal pleading standards. Further, Plaintiff here has failed to justify how her TVPRA claim is plead sufficiently to survive a Rule 12(b)(6) dismissal. Accordingly, this Court should dismiss Plaintiff's complaint.

## ARGUMENT

**I.     Plaintiff's Opposition Underscores That Her Complaint Fails To State A Claim By Duplicating Inapposite Arguments Across All Brands, Without Regard To Whether The Local Hotel Is Independent, Franchised, Or Corporate Managed.**

Plaintiff contends that the involvement of multiple defendants is not indicative of a "shotgun" pleading, and that the alleged incidents involved multiple hotels; hence, multiple defendants. Opp'n. at 5.  Generally speaking, of course Plaintiff may sue multiple defendants in

---

[4] Judge Ray also dismissed Plaintiffs' Georgia RICO claims against Franchisors and Corporate Affiliates because the Amended Complaints lack well-pled allegations under the Georgia RICO Act. As for Plaintiffs' negligence claims under a theory of vicarious liability, Judge Ray found that "the Amended Complaint, at best, makes allegations that are consistent with an ordinary franchise relationship (e.g. brand standards, contractual right to inspect, contractual right to terminate for noncompliance, etc.) which do not give rise to vicarious liability against franchisors." Judge Ray ultimately concluded that the Plaintiffs failed to make well-pled allegations giving rise to a plausible inference that the hotel franchisors are vicariously liable. To the extent Plaintiff here refuses to voluntarily dismiss Hyatt Hotels Corporation, Hyatt Hotels Corporation would similarly be able to establish there is no basis to find a parent holding company vicariously liable to Plaintiff.

one action. But Plaintiff still must meet the pleading standard as to each of the claims and as to each Defendant—a burden that Plaintiff has utterly failed to satisfy in her Complaint, mandating dismissal.[5] Arguably conceding this inadequacy, Plaintiff in her Opposition makes a procedurally improper request in the alternative for leave to amend. Plaintiff also tries to save her Complaint by setting out the facts and allegations specific to each Defendant, including Hyatt. Opp'n. at 6. But the presence of a handful of defendant-specific allegations does not erase the deficiency of a shotgun pleading.

As this Court has noted, "[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Dressler v. United States Dep't of Educ.*, 2019 U.S. Dist. LEXIS 55451, *5. "A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Id.* (citing *Weiland v. Palm Beach Cnty. Sheriff's Ofc.*, 792 F.3d 1313 (11th Cir. 2015), 792 F.3d at 1320). And the fact that the Complaint involves multiple defendants does not excuse Plaintiff from the pleading requirement that she delineate each allegation against each Defendant. The reason is that making conclusory allegations against multiple defendants over a span of years, without any identifying details, does not allow any single defendant to be on notice for the particular factual allegations against it. Accordingly – and as Judge Ray ruled when faced with a similar complaint -- this shotgun pleading must be dismissed.

## II.     Plaintiff's Opposition Offers No Facts Or Law To Bolster Her 1595(a) Claim And Thus, That Claim Should Be Dismissed.

---

[5] A Complaint that fails to distinguish between individual defendants and specific conduct that suggests liability, such as the present Complaint, cannot survive a Motion to Dismiss. In the Northern District of Georgia, Judge Ray granted Defendant Choice's Motion to Strike, finding that:

> Plaintiff's current Amended Complaint contains redundant, immaterial, impertinent or scandalous matter including "puffing" about sex trafficking and what it is and why it's bad. Such matters have no bearing on issues in this case and could serve to prejudice Defendants and confuse the facts at issue. Furthermore, the Amended Complaint is full of conclusions and short on specific facts.

4

Neither the facts in the Complaint nor Plaintiff's Opposition interpreting those facts demonstrate that Hyatt is directly liable under Section 1595(a). The "facts" in the Complaint against Hyatt merely allege vaguely that Plaintiff was trafficked at the Hotel on unspecific dates between 2008 and 2012, that she passed by the staff at the front desk, "visibly deteriorating," and that Hyatt received revenues from the reservation of rooms in which Plaintiff was trafficked. Absent more well-plead allegations under Section 1595(a), the Complaint should be dismissed.

> a. **The Opposition fails to demonstrate that Hyatt participated in a venture because Plaintiff failed to demonstrate either a direct association or continuous business relationship between Hyatt and C.K.'s Traffickers.**

Plaintiff's theory, pulled directly from the Southern District of Ohio's opinion in *M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019), is that Hyatt "participat[ed] in, and facilitated, the harboring and providing of C.K. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and/or commissions." Opp'n. at 10. Specifically, Plaintiff baldly contends that her trafficker had a trafficking venture and that Hyatt repeatedly rented rooms to the trafficker, thus participating in her trafficking. Opp'n. at 10.

Nowhere in Plaintiff's Opposition does she, nor can she, allege a direct association between Hyatt and her traffickers. Plaintiff "must allege at least a showing of a continuous business relationship between the trafficker and [Hyatt] such that it would appear that the trafficker and [Hyatt] have established a pattern of conduct or could be said to have a tacit agreement. *M.A. v. Wyndham*, 2019 WL 4929297 at *16. "Mere negative acquiescence" in sex trafficking is not enough. *See United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). "[M]ere association" in some endeavor "criminal or otherwise" is also not enough. *Id.* at 284. Instead, the defendant must have "actually participated in a sex-trafficking venture" by "commit[ting] some 'overt act'

5

that furthers the sex trafficking aspect of the venture." *Id.* at 286.[6]

Plaintiff claims that by alleging that Hyatt "repeatedly" rented rooms to C.K.'s trafficker, Plaintiff proffers that she has somehow met her burden. But without providing any indication regarding the alleged number of instances, or specific dates that her traffickers rented rooms at the Hotel, Plaintiff's Opposition and Complaint completely fail to demonstrate a continuous business relationship between Hyatt and C.K.'s traffickers, and also have failed to establish that merely renting rooms establishes a pattern of conduct or a tacit agreement between the Hotel and the traffickers. Plaintiff also fails to establish actual participation through some "overt act" that furthered C.K.'s trafficking. Absent a minimum showing that Hyatt participated in a venture, Plaintiff's Complaint must be dismissed.

### b. Plaintiff's allegations fall short of demonstrating that Hyatt knew or should have known the Plaintiff was trafficked.

Plaintiff argues that Hyatt "ignored red flags with regard to the victimization of C.K. on its property," and that her being "harbored at its property and the serious, visible physical abuse she endured at the hands of her trafficker while being forced to serve buyers at the properties, support that Hyatt knew or should have known." Opp'n. at 6 & 12. Notably, too, while Plaintiff is trying to bring these forward as allegations specific to the Hotel, the paragraphs of the Complaint Plaintiff is citing to in fact include the Hotel in a list of other properties. *See, e.g.*, Complaint ¶ 78, which names a Crowne Plaza as well as a Sheraton in addition to the Hotel. Thus, these allegations are far from specific, for example, that a specific Hotel staff member saw her on a particular day in a deteriorated state. Further, Plaintiff does not allege that staff or outside authorities were alerted of any trafficking activity at the Hotel. Therefore, Plaintiff cannot establish that Hyatt knew or should

---

[6] Judge Ray's findings followed the Southern District of New York's rationale in *Noble v. Weinstein*, 335 F.Supp.3d, 504, 524 (S.D.N.Y. 2018) and *Afyare*, specifically that "[a]ssociation alone cannot establish liability; instead, knowledge and "some participation in the sex trafficking itself must be shown."

have known that Plaintiff was trafficked.

Plaintiff argues that "Hyatt was on notice about the prevalence of sex trafficking "*generally*" at its hotels, but failed to take adequate steps to train their personnel in order to prevent or thwart the occurrence of sex trafficking at its properties." Opp'n. at 12.[7] However, "general reports about human trafficking" are insufficient to establish that Hyatt knew or should have known that the alleged venture was engaged in a specific act of sex trafficking of this specific plaintiff." *See Ratha v. Phatthana Seafood Co.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017). Plaintiff's Opposition fails to explain how unverified, isolated incidents, a number of which occurred during or after – not before - C.K.'s alleged trafficking, imputes knowledge on Hyatt with regard to this Plaintiff's alleged trafficking.

Plaintiff also argues that Hyatt "should have known" that Plaintiff was trafficked at the Hotel but for acting "willfully blind or negligent" by "fail[ing] to implement policies sufficient to combat a known problem in [its] operations." Opp'n. at 12. Importantly, Hyatt condemns all forms of human trafficking and sexual exploitation and has been in the forefront of hotelier training to combat this criminal enterprise. Indeed, Plaintiff in her Complaint cites to Hyatt's corporate statement regarding Human Rights, which details its actions taken by Hyatt at its hotels with respect to awareness training concerning Human Trafficking. *See* Complaint, ¶14, footnote 6.

Setting aside the existence of Hyatt's ongoing human trafficking awareness training, Plaintiff fails to allege that Hyatt personnel ever interacted with Plaintiff or her traffickers. Nor does Plaintiff allege that Hyatt deliberately avoided confirming Plaintiff's status on the premises, let alone specify what those steps would have been had there been any one-on-one interaction.

---

[7] Hyatt fully addresses Plaintiff's allegations of generalized knowledge based on unrelated trafficking incidents on page 13 of its Motion to Dismiss. Plaintiff does not reference the unrelated instances of trafficking at other hotels in her Opposition. Those allegations are confined to the Complaint, and Plaintiff does not explain how incidents that occurred after the instant allegations impute onto Hyatt any form of knowledge of trafficking.

Plaintiff cannot rely on her conclusory allegations in both her Complaint and Opposition that Hyatt was somehow willfully blind when there are no facts that Hyatt acted or failed to act with respect to this Plaintiff at the local hotel level, let alone at the holding company level. Absent some interaction or knowledge of Plaintiff's status on the premises, any policy would not have thwarted the alleged trafficking and therefore Section 1595's "knew or should have known" pleading requirement is not met and this Complaint should be dismissed.

### c. Plaintiff Failed to Identify Factual Allegations That Hyatt Knowingly Benefitted From Alleged Participation In A Sex Trafficking Venture.

Plaintiff has failed to allege facts regarding how Hyatt "knowingly benefitted" financially or otherwise from the alleged sex trafficking venture in this case. Plaintiff's argument follows the insufficient "knowing benefit" analysis in *M.A*, 2019 WL 4929297. Opp'n. at 14. In *M.A.*, the Court found that "the rental of a room constitutes a financial benefit *from a relationship with the trafficker* sufficient to meet this element of the § 1595(a) standard" (emphasis added). *M.A.*, Case No. 2:19-CV-849, *7. Plaintiff, however, has not established that Hyatt had a continuous business relationship with C.K.'s trafficker and therefore, she cannot establish that Hyatt "knowingly benefitted" from its alleged participation in C.K.'s trafficking.[8]

Plaintiff also cites three (3) paragraphs from her Complaint as support under the "knowingly benefitted" element. Opp'n. at 13. First, Plaintiff cites a Hyatt-specific paragraph under the "Parties" section of the Complaint. *Id.*; *see also*, Compl. ¶ 14. Second, Plaintiff cites a

---

[8] Judge Ray also cast doubt on the argument that if someone receives money unknowingly that originated from an illegal enterprise, they are liable for civil damages:

> So this isn't the right term. But if -- your argument is that if someone receives money that would have come through – originated with some illegal enterprise, whether they knew it or not, that they're liable for civil damages?

*See* February 7, 2020 Hearing Transcript, p. 49, ll. 13-17, *Jane Doe 1, et al..*, 1:19-cv-03840-WMR.

paragraph that does not mention how Hyatt "knowingly benefitted" from its alleged participation in a sex trafficking venture. *Id.*; *see also*, Compl. ¶ 59. Third, Plaintiff cites paragraph 100, which generally references "the Defendants" in typical shotgun-pleading fashion. *Id.*; *see also*, Compl. ¶ 100. These allegations, taken together, are grossly insufficient to support the Complaint's allegation that Hyatt "knowingly benefitted" from its alleged participation in a sex trafficking venture.[9]

Hyatt works to prevent trafficking at its hotels, and, as discussed above, devotes considerable resources to prevent sex trafficking within its sphere of influence. Moreover, trafficking poses risks to hotel guests and a significant threat to Hyatt's reputation. There is no plausible argument – nor any alleged facts – that Hyatt benefits from sex trafficking. And, if Hyatt benefited at all during C.K.'s trafficking, those benefits necessarily accrued "in spite of," rather than "because of," the traffickers' actions. *Geiss*, 383 F. Supp. 3d at 169–70.

## CONCLUSION

For the foregoing reasons, Hyatt respectfully requests that the Court dismiss this matter.

By: */s/ Marisa A. Trasatti*
Marisa A. Trasatti (Bar #25663)
Robert E. Scott, Jr. (Bar #05010)
Zachary A. Miller (Bar #20088)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
500 E. Pratt Street, Suite 600
Baltimore, MD 21202-3173

---

[9] Even Judge Atlas in *L.W.* was highly skeptical that renting rooms to traffickers is, on its own, sufficient to establish a "knowing benefit" to the hotel, management company, or parent holding company under the TVPRA:

> Okay. I want to know what the knowing benefit is that the plaintiff believes that -- I'm going to invite you -- right or wrong, I'm going to invite you to talk about the hotel. We can forget the holding companies since I know you're agreeing on some other defendant, but let's just generically refer to the management company and the hotel, okay? Because the hotel is not hard. I'm not -- I wouldn't -- I don't see a big hurdle on the allegations against the hotel, which I know isn't named

*L.W. v. Hilton Worldwide Holdings, Inc., et al.*, No. 4:19-CV-4172, pp. 14-15, ll. 13-25, 1-3. Here, Plaintiff certainly has not pled anything more than this insufficient allegation.

9

Tel. 410-539-1800  
Fax. 410-962-8758  
Marisa.Trasatti@wilsonelser.com  
Robert.Scott@wilsonelser.com

Attorneys for Hyatt Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all attorneys of record in the above-captioned case.

*/s/ Marisa A. Trasatti*
Marisa A. Trasatti (Bar #25663)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
500 E. Pratt Street, Suite 600
Baltimore, MD 21202-3173
Tel. 410-539-1800
Fax. 410-962-8758
Marisa.Trasatti@wilsonelser.com
Robert.Scott@wilsonelser.com

Attorneys for Hyatt Corporation